AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Trustee Under Trust Agreement Dated July 12, 1983, and Known as Trust No. 58243 and Henry Holzkamper, General Partner of Aragon Apartments, an Illinois limited partnership, Plaintiffs–Appellants,

v.

SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C., Defendant–Appellee.

No. 90–1189.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1991.

Decided Oct. 31, 1991.

Paul H. Strecker (argued), Robert M. Brawley, Richard K. Shire, Hanson & Shire, Chicago, Ill., for plaintiffs-appellants.

Eileen M. Marutzky, James A. Shapiro (argued), Asst. U.S. Attys., Crim. Div., Chicago, Ill., for defendant-appellee.

Before MANION and KANNE, Circuit Judges, and GRANT, Senior District Judge.*

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

KANNE, Circuit Judge.

Small mistakes and oversights often lead to larger problems. The unfortunate procedural tangle presented by this appeal turns on the seemingly simple issue of whether the district court's decision properly brought an end to the litigation at that level. As our discussion indicates, the district court clerk's responsibility to enter judgments in civil cases in accordance with Rules 58 and 79(b) of the Federal Rules of Civil Procedure is not one which should be taken lightly.

In May, 1983, the Department of Housing and Urban Development placed Winthrop Towers, a low-income housing development, up for public sale through a competitive bidding process. The bid package contained an express reservation permitting HUD to reject bids for, among other reasons, failing to meet the established minimum price or neglecting to include a certified check for 5% of the bid price. HUD received four sealed bids for Winthrop Towers by the deadline date, but three of the bids failed to include proper earnest money deposits and were ruled nonresponsive. The fourth bid—that of Aragon Apartments and its general partner, Holzkamper[1]—contained the earnest money deposit in the correct form. After opening the bids, a HUD spokesman announced that the successful bidder would not be announced at that time because of problems concerning the earnest money deposits. On Monday, July 25, a HUD representative allegedly informed Holzkamper's real estate representative that Holzkamper was the successful bidder. Later, however, HUD decided to reject all bids pursuant to the bid package's express reservation and to solicit new bids.

Upset with HUD's decision, Holzkamper filed a four-count complaint against the Secretary of the Department of Housing and Urban Development in Illinois state court. Counts I and II sought specific performance of the alleged real estate contract, while counts III and IV sought pre-liminary and permanent injunctions to prevent HUD from conveying the property to anyone other than Holzkamper. HUD promptly removed the case to federal court.

Primavera Development, another bidder for Winthrop Towers, petitioned to intervene as an interested party on October 14, 1983. The district court granted this motion, as well as Primavera's request that its earnest money check be released and its bid kept in place pending the outcome of the litigation between HUD and Holzkamper. Similarly, on November 22, 1983, the court granted the motion of Winthrop Towers, Ltd. (Winthrop), another bidder, seeking the identical relief.

The district court entered a preliminary injunction on November 7, 1983, enjoining HUD from opening additional bids for the purchase of Winthrop Towers. In its order, the district court also noted that it had diversity jurisdiction over the action. HUD then filed an answer to the four-count complaint denying that Holzkamper was entitled to any relief. Later, HUD moved for summary judgment on the grounds that the district court had jurisdiction over the case only because of the federal question under the Administrative Procedure Act, 5 U.S.C. § 701, et seq.; and that under the APA, HUD was entitled to judgment as a matter of law. Shortly thereafter, Holzkamper filed a cross-motion for summary judgment on the second count of his complaint, which requested specific performance of the alleged real estate contract.

On April 27, 1984, Winthrop filed a complaint asking the district court either to declare it the successful bidder or to affirm HUD's administrative decision. HUD answered the complaint, maintaining that Winthrop was not entitled to any relief other than HUD's administrative decision to resolicit bids for the property. On April 16, 1985, the district court reversed its position and ruled that it did not have diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] Rather, the court reasoned, its only basis

---

1. For the sake of convenience, we will refer to the appellants collectively as Holzkamper.

2. The case had been reassigned in November, 1984, and the successor district judge determined that there was no diversity jurisdiction.

for jurisdiction was the federal question of whether HUD had complied with the Administrative Procedure Act. The district court then denied Holzkamper's motion for summary judgment on Count II of his complaint and stayed HUD's motion for summary judgment to allow Holzkamper to brief the issues raised under the APA.

On June 10, 1987, the district court denied HUD's motion for summary judgment and held that Holzkamper was entitled to summary judgment under the APA. It then ordered HUD to complete its processing of Holzkamper's bid. HUD complied with the order, but after reviewing the bid HUD ultimately rejected it on February 23, 1988, because the bid failed to meet HUD's minimum price requirement and imposed conditions contrary to the specifications of the bid package.

After HUD rejected his bid, Holzkamper requested a status hearing. At the hearing, the district court granted him leave "to file any pleading on the issue of compliance" with respect to its judgment of June 10, 1987. He subsequently filed a memorandum that opposed HUD's rejection of the bid and asked the court to order HUD to award him the contract. Treating the memorandum as a motion to compel compliance with its June 10, 1987 order, the court denied the request because it found that HUD had complied with its previous order to process the bid.

Finally, nearly a year later, Holzkamper became aware (or so he believed) that HUD was about to sell Winthrop Towers to the State of Illinois. To assess the status of the litigation, he then filed a motion for clarification of the record in order to resolve various matters he believed had not yet been decided by the court. In his motion, he argued that the June 10, 1987 order was not final because the preliminary injunction had not been dissolved, the claims of the intervenors had not been decided and his original complaint was still pending.

On November 21, 1989, the district court explained its June 10, 1987 order. Viewing Holzkamper's motion for clarification as merely an attempt to reopen the prior rulings after the time for an appeal had expired, the court affirmed its position that the order was final and appealable as of the date of its entry. Specifically, the court noted that "as the June order gave the plaintiff all the relief to which he was entitled under the Act, the injunction was mooted and no longer necessary."[3] In addition, the court held that Holzkamper could not rely upon the claims of the intervenors as an indication the order was not final and appealable. Holzkamper then brought this appeal.

■ As we noted at the outset, the sole issue before us is whether the district court's June 10, 1987 order was final and appealable. "In general, a decision is final for the purposes of [28 U.S.C.] § 1291 if it ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." *Baltimore Orioles v. Major League Baseball Players Ass'n,* 805 F.2d 663, 666 (7th Cir.1986), *cert. denied,* 480 U.S. 941, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). To establish the June 10, 1987 order's lack of finality, Holzkamper argues that the order did not represent a final decision since it failed to comply with the requirements of Federal Rule of Civil Procedure 58. He also contends that the order did not end the litigation on the merits because it left some matters unresolved in the district court. We address each argument in turn.

■ The court's June 10th order which granted non-monetary relief constituted a "decision" under Rule 58, but without more, it was not enforceable, for "[u]nder Rule 58, a judgment is not effective until it is set forth on a separate document and entered on the district court civil docket." *Rosser v. Chrysler Corp.,* 864 F.2d 1299, 1305 (7th Cir.1988) (citing *United States v. Indrelunas,* 411 U.S. 216, 221, 93 S.Ct. 1562, 1564, 36 L.Ed.2d 202 (1973)); *see also*

---

**3.** The court also noted that Holzkamper "had never brought the injunction to the court's attention to assure its continued existence."

*Exchange Nat'l Bank v. Daniels,* 763 F.2d 286, 290 (7th Cir.1985) (time to appeal judgment does not begin to run until order is set forth in a "separate document"); FED. R.CIV.P. 58; FED.R.CIV.P. 79(b). In this case, the district court's written "Order" of thirteen pages in length set forth its reasoning for the disposition of the matters before it; the "Order" denied HUD's motion for summary judgment, granted Holzkamper's motion for summary judgment under the APA, and ordered HUD to process his bid. The clerk then prepared a "Minute Order Form," checking the box "Judgment is entered as follows" and laying out the operative terms of the order:

> HUD's motion for summary judgment is denied because it is not entitled to judgment as a matter of law. Plaintiffs are entitled to summary judgment and relief under the Administrative Procedure Act. 5 U.S.C. § 706. Accordingly, the Secretary is ordered to complete processing plaintiff's bid.

The "Minute Order Form" was then entered on the court's docket. Through mistake or oversight, however, the clerk neglected to complete an AO 450 Form ("JUDGMENT IN A CIVIL CASE"), the "separate document" typically used to satisfy the requirements of Rule 58 and Rule 79(b). Thus, the first question we must address is whether the June 10, 1987 "Minute Order Form" containing the decision of the court constitutes a separate document for the purpose of Rule 58.

Our opinions have interpreted Rule 58 to require that the judgment be "self-contained and complete." *American Interinsurance Exch. v. Occidental Fire & Cas. Co.,* 835 F.2d 157, 159 (7th Cir.1987); *see also Azeez v. Fairman,* 795 F.2d 1296, 1297 (7th Cir.1986). In addition, the judgment must set forth the relief to which the prevailing party is entitled, *Reytblatt v. Denton,* 812 F.2d 1042, 1044 (7th Cir.1987), and should not incorporate another document or contain legal reasoning. *Id.; accord Horn v. Transcon Lines, Inc.,* 898 F.2d 589, 591 (7th Cir.1990) ("An opinion is not a sufficient substitute for a judgment.... An opinion explains the reasons for entering a judgment but is not itself a source of legal obligations.") (citing *Eakin v. Continental Illinois Nat'l Bank & Trust Co.,* 875 F.2d 114, 118 (7th Cir.1989). If it meets these requirements, we have determined that a clerk's minute entry may constitute a separate document giving effect to a "final decision" under 28 U.S.C. § 1291. *Homemakers North Shore, Inc. v. Bowen,* 823 F.2d 174, 174 (7th Cir.1987) (judgment final and appealable where minute entry stated "Secretary is granted summary judgment. Plaintiff's cross-motion for summary judgment is [denied]. Pretrial conference and trial dates are stricken." and entry preceded by phrase "judgment is entered as follows:"); *but see Foremost Sales Promotions, Inc. v. Director, Bureau of Alcohol, Tobacco and Firearms,* 812 F.2d 1044, 1045–46 (7th Cir.1987) (if "other docket entry" box is checked, it is signal that district court proceedings are not final).

Here, the box on the "Minute Order Form" indicating "Judgment is entered as follows:" was marked. It then set forth the relief Holzkamper was entitled to receive as it explicitly stated that "the Secretary is ordered to complete processing plaintiffs' bid." Finally, the "Minute Order Form" merely stated the relief ordered by the court; it did not incorporate the court's thirteen page opinion analyzing Holzkamper's complaint or contain any additional legal reasoning. Therefore, as did the court in *Homemakers North Shore,* we conclude that the "Minute Order Form" of June 10, 1987 was a "separate document" which satisfied the requirement of Rule 58.[4]

However, while the "Minute Order Form" may serve as a separate document for entry of a civil judgment, the decision it reflects must also be final and appealable. To be final and appealable the order must

---

**4.** This exercise to determine whether the decision of the district court set forth on the "Minute Order Form" could satisfy the separate document requirement of Rule 58 for entry of a civil judgment would have been avoided if the district clerk had simply followed proper procedure and entered Judgment Form AO 450.

"end[ ] the litigation on the merits and leave[ ] nothing for the district court to do but execute the judgment." *Baltimore Orioles*, 805 F.2d at 666; *Smith–Bey v. Hospital Adm'r*, 841 F.2d 751, 755 (7th Cir.1988). In this case, Holzkamper argues that the June 10, 1987 order was not final and appealable because it did not end the litigation for several reasons—namely, the district court's June 10, 1987 order, he claims, failed to dispose of the intervenors' claims and his entire original complaint. Holzkamper also maintains that the order did not dissolve the preliminary injunction entered by the district court on November 7, 1983.

Although the district court did not detail in explicit fashion a declaration of the intervenors' rights, it is evident the district court intended the June 10, 1987 order to dispose of the proceedings with respect to the intervenors since their claims could not logically survive its grant of summary judgment in favor of Holzkamper under the APA. *American Family Mut. Ins. Co. v. Jones*, 739 F.2d 1259, 1262 n. 1 (7th Cir.1984) (our review of the pleadings compels the conclusion that a judgment in favor of [the plaintiff] on its complaint effectively disposed of the [defendants'] counterclaim); *cf. Baltimore Orioles*, 805 F.2d at 667 (an order that effectively ends the litigation on the merits is an appealable final judgment even if the district court did not formally enter judgment on a claim that one party has abandoned); *American Nat'l Bank & Trust Co. v. Bailey*, 750 F.2d 577, 580–81 (7th Cir.1984), *cert. denied*, 471 U.S. 1100, 105 S.Ct. 2324, 85 L.Ed.2d 842 (1985) (same). The intervenors' petitions sought only to keep their bids in place during the "pendency of this cause." When the June 10, 1987 order disposed of the "cause," the intervenors received all the relief they had requested; their bids had been kept in place until the dispute regarding Holzkamper's bid was resolved. At that time, HUD was free to reconsider their bids if it wished or to resolicit new bids. The intervenors were not entitled to any additional relief under their petitions to intervene.[5]

■ The June 10, 1987 order effectively disposed of Winthrop's complaint requesting the district court to either declare it the successful bidder or to affirm HUD's administrative decision. When the district court granted Holzkamper's motion for summary judgment under the APA and ordered HUD to process Holzkamper's bid, the court could no longer grant Winthrop's request to declare it the successful bidder. Moreover, the district court had made it clear that it lacked jurisdiction to consider Holzkamper's claim for specific performance; therefore it also had no jurisdiction over Winthrop's claim to purchase the property. Thus, the first count of Winthrop's complaint was mooted.

Winthrop requested in the alternative that the district court affirm HUD's administrative decision to resolicit bids on the property. In essence, Winthrop joined HUD's motion for summary judgment. Accordingly, when the district court denied HUD's motion for summary judgment, it also operatively denied Winthrop's alternative request for relief in its complaint. It is important to note that Winthrop (unlike Holzkamper) had not sought to compel HUD to process its bid. Therefore, after HUD completed its processing of Holzkamper's complaint, Winthrop had no claim pending which would have required HUD to then process its bid. Rather, in order to obtain administrative review of its bid on the property, Winthrop would have been required to file a new suit or to re-open the previous lawsuit; neither of these actions, however, would have had any effect on the finality of the district court's June 10, 1987 order. Because Winthrop's entire complaint was disposed of by the June 10, 1987 order, no outstanding claim remained.[6]

---

5. While not critical to our decision, it is significant that the intervenors did not take any additional action, except for the formal withdrawal of counsel for Winthrop from the case, after the June 10, 1987 order granted summary judgment in favor of Holzkamper under the APA since it indicates that they believed their claims had been disposed of by the June 10, 1987 order.

6. Holzkamper, citing two Third Circuit cases, also contends that even if the intervenors' claims were disposed of by the June 10, 1987

■ Holzkamper next argues that he was not required to appeal the June 10, 1987 decision because his original four-count complaint is still pending since the district court never entered a formal dismissal. To make this argument though, Holzkamper must ignore the district court's conclusion that it lacked jurisdiction to consider these counts. In its decision two years earlier on April 16, 1985, the district court correctly held that it did not have diversity jurisdiction over the parties in this action because the United States is not a citizen of a state for diversity purposes. *See General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 703 (7th Cir.1991) (United States is not citizen of any state for diversity purposes, and agencies of the United States likewise cannot be sued in diversity) (citations omitted). While Holzkamper maintains that *Trans–Bay Eng'rs and Builders, Inc. v. Hills,* 551 F.2d 370, 376 (D.C.Cir.1975) supports his contention that the district court had diversity jurisdiction over the parties in this action, and thus could consider the four counts of his complaint, this court has soundly rejected this holding. *Corcoran,* 921 F.2d at 703–04 (U.S. agencies cannot be sued in diversity). Nor is it of any consequence that Holzkamper's complaint named the Secretary, and not HUD, as the defendant since administrators cannot be distinguished from their agencies for purposes of determining diversity. *Id.* at 704. Therefore, when the district court concluded there was no diversity jurisdiction in its April 16, 1985 order, the district court could not grant relief based on Holzkamper's four-count complaint since none of the requested relief of those counts could be maintained under the APA.[7] Accordingly, we find that Holzkamper's entire complaint was resolved by the June 10, 1987 order of the district court.

Lastly, Holzkamper argues that June 10, 1987 order was not final because it never dissolved the preliminary injunction entered by the district court on November 7, 1983. Holzkamper's sole basis for this contention is that he needed the preliminary injunction to remain intact during this period to prevent HUD from alienating the property without court approval while processing his bid. The district court determined that the preliminary injunction became moot when it ordered HUD to process Holzkamper's bid and that formal dissolution was not necessary. We agree; HUD could not have sold the property to another bidder before processing Holzkamper's bid without directly violating the district court's June 10, 1987 order.

For the foregoing reasons, we conclude that the judgment entered on the court's June 10, 1987 order was final and appealable. Accordingly, the decision of the district court is AFFIRMED.

order, he could not have taken an appeal from the order because these claims were not officially disposed of and certified pursuant to Federal Rule of Civil Procedure 54(b). *Owens v. Aetna Life & Cas. Co.,* 654 F.2d 218, 220 n. 2 (3d Cir.), *cert. denied,* 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 631 (1981); *Knox v. United States Lines Co.,* 294 F.2d 354 (3d Cir.1961). In this circuit, however, the technical requirements of 54(b) need not be met when claims cannot "logically survive a judgment." *Jones,* 739 F.2d at 1261–62 n. 1. As our previous discussion noted, the intervenors' claims could not have logically survived the court's grant of summary judgment in favor of Holzkamper under the APA. We therefore do not believe the district court's June 10, 1987 order was required to be formally certified under Rule 54(b) to constitute a final and appealable order.

7. We note that the district court did consider the contract claim in Count II of Holzkamper's complaint requesting specific performance of the alleged real estate contract and found it was without merit. However, it stated that it did so only because of the "posture of the case," in light of the prior contradictory decisions by the district judge and magistrate.