In re John E. MILLS, Respondent.

No. 58878.

Supreme Court of Missouri,
En Banc.

July 12, 1976.

Rehearing Denied Sept. 13, 1976.

Walter M. Clark and Edwin L. Noel, St. Louis, for informants.

Welliver, Atkinson & Eng, Columbia, for respondent.

HENLEY, Judge.

This is a disciplinary proceeding commenced in this court pursuant to Rule 5 [1] by The Advisory Committee (informants) [2] against John E. Mills (respondent) a member of the bar of this state residing at New London, in Ralls county. The information charges respondent with violation of Rule 4, Code of Professional Responsibility, canons 1, 5 and 7, and in particular DR1–102(A)(4) and (5); DR5–101(A); DR5–104(A); DR7–

---

1. References to rules are to Missouri Supreme Court Rules.

2. The General Chairman of the committee disqualified himself from participating in the consideration of this matter while it was pending before the committee.

102(A)(3) and (8).[3] After the pleadings were made up, a Master was appointed by the court to hold a hearing pertaining to the charges. He has done so and has made and filed his report, findings and conclusions. The Master's recommendation is that respondent be disciplined. Informants and respondent, through their respective counsel, have filed briefs and presented oral argument.

The acts of respondent charged in the information and found by the Master to be in violation of the Code occurred in early 1974, while respondent was engaged in the private practice of law. Since those dates, respondent, on January 1, 1975, became Probate Judge and ex officio Magistrate of Ralls county, having been elected to that office in November, 1974.

We have reviewed and considered the whole record. There is no real dispute as to the facts and no need to lengthen this opinion with more than a brief summary of the evidence heard, reviewed and considered. It is sufficient to say that the evidence supports our decision that respondent must be disciplined.

We find from the evidence and conclude that in January, 1974, respondent was, and had been for several years, guardian of the estate of Kenneth Grayson, a Marine Corps veteran who had been determined to be an incompetent by the Probate Court of Ralls county; that respondent acquired in a trade in October, 1973 (but did not record the deed conveying the property to him), and desired to sell, a lot in New London with a mobile home located thereon which had been used as a residence; that his ward desired to purchase this lot and the mobile home for his residence; that on January 30, 1974, respondent, as guardian, filed a petition in the Probate Court of Ralls county seeking an order authorizing him to buy this real estate for his ward and did not

reveal therein, but intentionally concealed, the fact that he was the owner and seller thereof; that the probate court,[4] without hearing evidence thereon, sustained the petition and entered an order on the same day authorizing respondent, as guardian, to purchase this property for his ward for $8,000 (the price asked) on terms of $2,000 cash with the balance, payable in monthly installments, evidenced by a promissory note bearing interest at 8% per annum, to be secured by a deed of trust; that on January 31, 1974, respondent prepared and had the persons from whom he (respondent) had acquired the property in October, 1973, execute and acknowledge a general warranty deed conveying the lot and the mobile home direct from them to respondent as guardian for Kenneth Grayson; that respondent filed this deed for record February 4, 1974, but wrote across the top of the deed "Do not publish," as a request to the local newspaper that news not be published regarding the deed; that on January 17, 1974, respondent wrote the regional attorney of the Veterans Administration enclosing a copy of the petition later filed in the probate court and a copy of the proposed order approving the purchase,[5] but he intentionally concealed the fact that he was the seller; that the attorney replied to this letter by sending respondent a waiver of appearance on behalf of the Veterans Administration, but he testified that had he been aware of the fact that respondent was the seller he would not have approved the transaction.

As a matter of fact, respondent does not deny that he sold this property to his ward or that the property was owned by him. Nor does he deny that he did not inform the probate judge in person or by allegation in his petition as guardian that he owned the property and was the seller. Nor does he deny that he did not inform the Veterans

---

3. He is also charged with violation of EC9–6 of Rule 4. However, the ethical considerations (EC), unlike the Disciplinary Rules (DR), are not mandatory, but "are aspirational in character and represent the objectives toward which every member of the profession should strive." See Rule 4, Preliminary Statement.

4. Both the probate judge and his clerk at the time, were dead when the Master heard this case October 29, 1975.

5. See § 475.450, RSMo 1969, a part of the Uniform Veterans' Guardianship Law.

Administration of these facts when he sought its waiver of appearance. Respondent knew, of course, that the probate court's authority under § 475.450 to approve and authorize the purchase of real estate as a home for a veteran explicitly excludes real estate in which the guardian has an interest. Moreover, he knew the Canons and Disciplinary Rules of the Code of Professional Responsibility.

The conclusion is inescapable that respondent engaged in self-dealing, even if it be assumed that he did not make a profit on the sale. He improperly used his fiduciary position to make a sale of property he wanted to dispose of and whether he made a profit thereon is of no significance. Nor is it of any significance or excuse for respondent's action that the ward knew that his guardian owned the property he wanted for a residence, or that the ward's mother knew and approved of the purchase. The ward, although an adult, was incompetent, and respondent was in no position to deal with him at arm's-length in a business transaction, because of the fiduciary relationship and because the ward was incapable of consenting to the purchase. Thus, respondent violated DR5-104(A). He concealed the fact of his ownership from the probate court and the Veterans Administration, one of which he knew had the obligation to deny him an order authorizing the purchase and the other he knew would not waive its appearance but would require further investigation and delay, if it had this information. In doing so respondent engaged in conduct involving deceit and misrepresentation, conduct prejudicial to the administration of justice. He violated DR1-102(A)(4) and (5).

Respondent contends that exclusive jurisdiction to initiate and prosecute disciplinary proceedings against an incumbent judge in this court is in the Commission on Retirement, Removal and Discipline;[6] that the Advisory Committee was without jurisdiction or authority to do so notwithstanding the fact that the alleged acts were violations of the Code of Professional Responsibility committed while he was a practicing lawyer; that for these reasons this court is without jurisdiction to proceed in this case. Respondent argues that for the Advisory Committee to initiate and prosecute such proceedings against an incumbent judge in a case which could lead to disbarment or other discipline for which the judge's license to practice law would be cancelled, and one of his qualifications for the office thereby removed, would result in this Committee having the power indirectly to effect the removal of a judge from office. The Missouri cases[7] he cites are not applicable or controlling in this case and the Florida and Oklahoma cases[8] are not persuasive and, of course, not controlling.

We were presented with a matter somewhat analogous to this in *In Matter of Hasler,* 447 S.W.2d 65 (Mo.banc 1969). In *Hasler* we held that misconduct of a lawyer while serving as a judge was ground for and supported his disbarment as a lawyer after his resignation from the judgeship. Here, we are presented with an action to discipline a person, now serving as a judge, for misconduct committed while he was a lawyer and before he became a judge. Does his position on the bench render him immune to discipline for violation of the Code of Professional Responsibility applicable to all persons licensed to practice law in this state? Respondent argues that since he may not practice law while a judge, he may not be disciplined while a judge for misconduct committed while a lawyer. Although he may not practice law while a judge, he still holds a license to practice law

---

6. Created by the 1970 amendment of the judicial article of the Constitution. See Mo.Const. Art. V, § 27, as amended.

7. *State ex inf. Shartel v. Brunk,* 326 Mo. 1181, 34 S.W.2d 94 (banc 1930); *State ex inf. McKittrick v. Williams,* 346 Mo. 1003, 144 S.W.2d 98 (banc 1940); *State ex inf. Barrett v. Hedrick,* 294 Mo. 21, 241 S.W. 402 (banc 1922); *State ex rel. Henson v. Sheppard,* 192 Mo. 497, 91 S.W. 477 (1905).

8. *Chambers v. Central Committee of Oklahoma Bar Assn.,* 203 Okl. 583, 224 P.2d 583 (Okl. 1950); *In re Proposed Disciplinary Action,* 103 So.2d 632 (Fla.1958).

(a qualification he must have to hold the office of judge), he is still a lawyer, and if he has violated the Code of Professional Responsibility he is, as an officer of this court, amenable to discipline even though it result directly in cancellation of his license and, thereby, lead indirectly to his removal from office. He may not take refuge in a judicial office from discipline for prior misconduct, the effect of which would be removal of one of his qualifications for occupying the refuge. To permit the use of a judicial office as such a sanctuary would be a travesty upon justice.

Respondent, asserting that the General Chairman of The Advisory Committee refused to divulge the name or names of complaining witnesses, contends that such refusal deprived him of his right to discovery and, thereby, his right to confront his accusers as guaranteed by Mo.Const. Art. I, § 18(a) and the Sixth and Fourteenth Amendments to the Constitution of the United States. He bases this contention on his assertion and argument that a disciplinary proceeding is quasi-criminal in nature and involves a valuable property right, the "right" to practice law; that therefore the rights of confrontation and procedural due process guaranteed by the state and federal constitutions apply fully.

■ The "confrontation" guarantee of the state and federal constitutions relates to criminal prosecutions; not to proceedings to discipline a lawyer for professional misconduct. A disciplinary proceeding is not a "criminal prosecution"; it is a proceeding "*sui generis*," in the nature of an inquiry by the court into the conduct of its officer for the protection of the public, the courts and the profession. *In re Conner,* 357 Mo. 270, 207 S.W.2d 492, 499[14, 15] (Mo.banc 1948); *In re Sparrow,* 338 Mo. 203, 90 S.W.2d 401, 404[8] (banc 1935); *In re Fenn,* 235 Mo.App. 24, 128 S.W.2d 657 (1939). Hence, respondent was not denied rights protected by those provisions of the state and federal constitutions mentioned above.

His claim that by this proceeding he is being denied a valuable property right without due process of law is without merit. Rule 5 affords him due process and it has been followed faithfully in this case.

■ Nor is there any merit in his final contention that he was denied due process guaranteed by Mo.Const. Art. I, § 10 and § 1 of the Fourteenth Amendment. In this connection he asserts that he did not get a fair and impartial hearing before The Advisory Committee, because two members of that committee serving at the time of hearings before the Committee in this case were members of the Committee when a prior alleged violation by respondent of the Code was investigated and a decision made to file charges against him in this court.[9] His argument seems to be that these two members could not have given him a fair "trial" in this case, because their efforts to discipline him in the earlier case failed. His contention is based on the false premise that The Advisory Committee "tried" him in this case. He cites in support of his position: *In the Matter of Schlesinger,* 404 Pa. 584, 172 A.2d 835, a 1967 decision of the Supreme Court of Pennsylvania in which the court addressed itself to the possible threats to due process guarantees when investigatory, prosecutorial and judicial functions are merged in one committee. From this point, he assumes and states that in his "trial" before The Advisory Committee he was denied due process because the investigatory, prosecutorial and judicial functions are merged under Missouri procedures in that Committee. He does not understand the Missouri procedure. The judicial function in this process is that of this court. The ultimate decision as to whether a member of the bar of this state has violated the Code of Professional Responsibility and whether he should be disciplined rests exclusively in this court. The function of The Advisory Committee is investigatory and prosecutorial only; it has no "judicial" function in this process. *In re Sparrow,* 338 Mo. 203, 90 S.W.2d 401 (banc 1935); *In re*

---

9. See: *In re Mills,* 462 S.W.2d 700 (Mo.banc 1971) in which no discipline was imposed and

the information dismissed in a memorandum opinion.

*Gamblin,* 458 S.W.2d 321, 323[1, 2] (Mo.banc 1970).

As noted in the beginning, respondent must be disciplined. We have considered the extent to which he should be disciplined and conclude that neither the maximum: disbarment; not the minimum: reprimand, is appropriate. An indefinite suspension with leave to apply for reinstatement at a stated time appears to be appropriate.

Accordingly, respondent's license to practice law is suspended indefinitely and he is granted leave to apply for reinstatement after the expiration of one year from the date of this opinion, upon a showing that he is then a person fit to be licensed to practice law in this state. The costs are taxed against respondent.

MORGAN, HOLMAN, FINCH and DONNELLY, JJ., concur.

SEILER, C. J., and BARDGETT, J., would discipline but would limit to reprimand.