The sole issue presented by this petition for a writ of mandamus is whether the Circuit Court of Jefferson County should be ordered to dismiss this action filed against nonresidents on the ground that the court did not have personal jurisdiction of the nonresident defendants. After studying the petition and the evidence presented in support of it, we hold that the trial court had personal jurisdiction of the nonresident defendants. We deny the writ.
This case arises out of the operation of several oil and gas properties in Louisiana. The petitioner Paul Maclean is a Louisiana citizen and is the president of the petitioner Paul Maclean Land Services, Inc., a Louisiana corporation having its principal place of business in Terrebonne Parish, Louisiana. Paul Maclean and his wife, Judith Maclean, also a resident citizen of Louisiana, own 100% of the stock of Paul Maclean Land Services, Inc.
The plaintiffs are Canlan Oil Company, Lanoco, Inc., and Hobart A. McWhorter, Jr. Canlan, a Louisiana corporation, operated numerous oil and gas fields in Louisiana. These oil and gas fields were owned by various partnerships with partners from numerous states. Paul Maclean and his company entered into an oral contract in Louisiana with Canlan to serve as the manager for Canlan's oil and gas fields in Louisiana. Maclean was entrusted with the day-to-day administrative and production decisions regarding these oil and gas properties operated by Canlan and owned by various groups of general partners. Among these partners were many Alabama residents, including plaintiff McWhorter. Paul Maclean and Paul Maclean Land Services performed these managerial and administrative services for Canlan for approximately 10 years.
Pursuant to his contract with Canlan, Maclean coordinated the activities of numerous contractors and consultants. Maclean would approve invoices submitted for payment by these contractors and consultants, and, after he approved them, he would give them to Andrew McCollam, Jr., the president of Canlan, for his approval. McCollam is a resident and citizen of Terrebone Parish, Louisiana. After McCollam approved the invoices, McCollam would generally instruct Maclean to send most of them to Canlan's accountant, Herb Raburn, who lived in Birmingham. All of these invoices were approved by McCollam and were paid to Maclean in Louisiana.
In October 1991, Lanoco, Inc., an Alabama corporation, was formed; it succeeded Canlan as operator of the oil and gas properties in Louisiana. According to Mr. Maclean, he never knew Lanoco was an Alabama corporation, never knew its offices were located in Birmingham, and really did not know anything about Lanoco until he was told that Lanoco was going to take over the operation from Canlan. Herb Raburn, who had previously handled the invoices approved by Maclean and Canlan, was the president of Lanoco.
In March 1992, Canlan, Lanoco, and McWhorter filed the complaint here involved against Paul Maclean, Maclean Land Services Inc., and several other individuals and businesses from Louisiana. The complaint, as amended, sought damages for breach of contract, breach of fiduciary duty, fraud, conspiracy to defraud, and tortious interference with business and contractual relations, and also sought equitable *Page 1286 
relief in the form of a declaratory judgment and an accounting. The gravamen of the plaintiffs' complaint was that the defendants had organized a scheme to defraud them by agreeing to submit invoices seeking payment for services not rendered and for services that previously had been invoiced and paid.
In May 1992, Maclean and Paul Maclean Land Services filed a motion to dismiss, claiming that the Alabama court lacked personal jurisdiction of each of them. Circuit Judge Jack Carl denied the motion to dismiss. Maclean and Paul Maclean Land Services subsequently filed this petition for a writ of mandamus.
This Court has repeatedly made it clear that a writ of mandamus is an extraordinary remedy requiring a showing that there is: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte Alfab, Inc.,586 So.2d 889, 891 (Ala. 1991). Because the order of the trial court was interlocutory, a writ of mandamus is an appropriate remedy for the petitioners in this case. Ex parte Hartford Insurance Co.,394 So.2d 933 (Ala. 1981).
Alabama's long-arm rule, Rule 4.2, Ala.R.Civ.P., extends the jurisdiction of the Alabama courts to the permissible limits of due process. Knowles v. Modglin, 553 So.2d 563, 565 (Ala. 1989);Dillon Equities v. Palmer Cay, Inc., 501 So.2d 459, 461
(Ala. 1986). Rule 4.2(a)(2) sets out the bases for personal jurisdiction over nonresident defendants. Applicable to this case, Rule 4.2(a)(2)(I) provides in pertinent part:
 "(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
". . . .
 "(I) . . . having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States."
Whether sufficient contacts exist so that the maintenance of the suit in Alabama does not offend reasonableness and fair play is determined on a case by case basis. Bryant v. CeatS.P.A., 406 So.2d 376, 377 (Ala. 1981), cert. denied,456 U.S. 944, 102 S.Ct. 2008, 72 L.Ed.2d 466 (1982).
In Keelean v. Central Bank of the South, 544 So.2d 153, 156
(Ala. 1989), this Court set out a two-step analysis for determining whether an Alabama court can exercise personal jurisdiction over a nonresident defendant:
 "1) the determination of whether it is foreseeable to the nonresident defendant that he will be sued in this state; and
 "2) the determination of the degree of contact that the nonresident defendant has with this state."
The fundamental question here is whether there is "a clear, firm nexus between the acts of the defendant and the consequences complained of in order to establish the necessary contacts." Duke v. Young, 496 So.2d 37, 39 (Ala. 1986). In a similar case, Ex parte Lord Son Construction, Inc.,548 So.2d 456 (Ala. 1989), a Florida subcontractor entered into a contract with a Florida general contractor for the construction of a project in Florida. An Alabama company supplied the electrical materials. The Florida general contractor issued two checks that were jointly payable to the Florida subcontractor and the Alabama material supplier, and then wrote a check to the Florida subcontractor alone for the balance due. The Alabama material supplier sued the Florida general contractor and the Florida subcontractor in an Alabama court. The Florida general contractor petitioned for writ of mandamus after its motion to *Page 1287 
dismiss for lack of personal jurisdiction was denied. This Court denied the petition, even though in that case the Florida general contractor maintained no corporate offices in Alabama, did not advertise or solicit business in Alabama, had no bank accounts or mailing address in Alabama, and had no telephone listings in Alabama. The Court determined that, even in the absence of these typical "contacts," the Florida general contractor acted in such a manner that it reasonably could have anticipated the direct consequences of its actions to be felt by an Alabama resident. 548 So.2d at 457.
In View-All, Inc. v. United Parcel Service, 435 So.2d 1198,1201 (Ala. 1983), the Court, quoting Professor Moore, summarized the correct constitutional requirements in this area:
 " 'In addition to some minimum contacts with the state, it must be fair and reasonable to require the defendant to come into the state and defend that action. . . . [I]n determining what is fair and reasonable, the court may consider factors associated with the doctrine of forum non conveniens, but need not give them overriding importance. . . .
 " 'Based as they are on notions of fairness and reasonableness, the Supreme Court decisions do not permit a simple generalization of the rule pertaining to in personam jurisdiction over foreign corporations. . . .
 " 'If there are substantial contacts with the state, for example a substantial and continuing business, and if the cause of action arises out of the business done in the state, jurisdiction will be sustained. If there are substantial contacts with the state, but the cause of action does not arise out of these contacts, jurisdiction may be sustained. But if there is a minimum of contacts, and the cause of action arises out of the contacts, it will normally be fair and reasonable to sustain jurisdiction. If there is a minimum of contacts and the cause of action does not arise out of the contacts, there will normally be no basis of jurisdiction, since it is difficult to establish the factors necessary to meet the fair and reasonable test.'
 "2 J. Moore, Federal Practice, Para. 4.25, pp. 4-258 through 4-267 (2d ed. 1982)."
The effects of a nonresident's activities on the forum state are especially apparent in those cases where there are allegations of fraud by the nonresident defendant, as in this case, even though there is no evidence of a physical presence by the nonresident individual or corporation. Shrout v.Thorsen, 470 So.2d 1222, 1224 (Ala. 1985); Alabama WaterproofingCo. v. Hanby, 431 So.2d 141, 145-46 (Ala. 1983). However, an allegation of fraud, standing alone, does not necessarily give an Alabama court in personam jurisdiction over a nonresident defendant, especially if the cause of action does not arise out of the contacts.
In this case, the plaintiffs claim that the petitioners, together with the other defendants to this action, organized a scheme to defraud the plaintiffs by agreeing to submit invoices seeking payment for services not rendered and for services that previously had been invoiced and paid. According to the plaintiffs, Mr. Maclean was aware that this alleged fraudulent activity would be felt by Alabama residents because, as Mr. Maclean testified, he had knowledge that many of the participants in the partnerships that owned the oil and gas properties were Alabama residents. One of these Alabama residents was the plaintiff Hobart McWhorter, Jr. Mr. Maclean also testified that he knew that these allegedly fraudulent invoices were remitted to and paid from the offices of Canlan's, and later Lanoco's, accountant in Birmingham, because he submitted the invoices directly to Birmingham for payment.
Furthermore, the plaintiffs contend that Mr. Maclean was engaged by Lanoco, an Alabama corporation, to serve as operator of the oil and gas properties for the months of November and December 1991 at a monthly salary of $11,000. In October 1991, Lanoco had taken over operation of the relevant oil and gas properties from Canlan. Although the exact nature of the relationship between Lanoco and Mr. Maclean *Page 1288 
is unclear, the plaintiffs submit that Mr. Maclean was paid $11,000 by Lanoco for the month of November 1991, but did not perform the services promised and thereby breached the contract. While Mr. Maclean testified that he never dealt with Lanoco on a regular basis, he also stated that there was a "strong possibility" that he submitted invoices to Lanoco in November and December 1991.
We conclude that these contacts with Alabama were sufficient to make it foreseeable under these facts that the petitioners would be sued in this State. Therefore, we hold that the petitioners' contacts with Alabama were sufficient to establish personal jurisdiction and that the trial court, therefore, appropriately denied their motion to dismiss.
WRIT DENIED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.