889 So.2d 545 (2004)
Ex parte GEORGIA FARM BUREAU MUTUAL AUTOMOBILE INSURANCE COMPANY.
(In re Donald Johnson and Cynthia Johnson
v.
Georgia Farm Bureau Mutual Automobile Insurance Company).
1011899.
Supreme Court of Alabama.
March 26, 2004.
*546 T. Randall Lyons, Bradley L. Hendrix, and William H. Webster of Webster, Henry & Lyons, P.C., Montgomery, for petitioner.
Christopher B. Scott of Smith, Wallis & Scott, LLP, Carrollton, Georgia, for respondents.
JOHNSTONE, Justice.
The defendant Georgia Farm Bureau Mutual Automobile Insurance Company ("Georgia Farm Bureau") petitions this Court for a writ of mandamus directing the trial court to dismiss this case. We grant the petition and issue the writ of mandamus.

*547 Facts

In 1999, the plaintiff Donald Johnson, while riding as a guest passenger in a car owned and operated by an Alabama resident ("the owner-operator"), was injured in a one-car accident in Randolph County, Alabama ("the accident"). The parties agree that the accident was proximately caused by the simple negligence of the owner-operator. Although the owner-operator's liability insurance covered him for the accident, the owner-operator's insurer declined to compensate Johnson for his injuries on the ground that the application of the Alabama guest-passenger statute, § 32-1-2, Ala.Code 1975, to Johnson's status as a guest in the owner-operator's car relieved the owner-operator of liability to Johnson for simple negligence.
At the time of the accident, Donald Johnson resided in the household of his mother, the plaintiff Cynthia Johnson, in Carroll County, Georgia. At that time, Cynthia Johnson maintained a policy of automobile liability insurance with Georgia Farm Bureau ("the policy"), which afforded Donald Johnson uninsured-motorist coverage. However, when Donald Johnson claimed uninsured-motorist benefits under the policy for the injuries he sustained in the accident, Georgia Farm Bureau denied his claim on the ground that Georgia law (§ 33-7-11, Ga.Code Ann.) conditions a party's recovery of uninsured-motorist benefits on that party's first obtaining a judgment against the tortfeasor.
After Georgia Farm Bureau denied Donald Johnson's claim, Donald and Cynthia Johnson sued Georgia Farm Bureau for breach of contract in the Randolph Circuit Court. Georgia Farm Bureau then moved to dismiss the lawsuit on the grounds that the trial court did not have in personam jurisdiction over Georgia Farm Bureau and did not constitute a proper venue for the case. Georgia Farm Bureau supported the motion with an affidavit of a Georgia Farm Bureau employee attesting that Georgia Farm Bureau was a Georgia corporation. He further attested that Georgia Farm Bureau did not employ agents in Alabama, did not solicit business in Alabama, and did not sell insurance to residents of Alabama. The plaintiffs' complaint itself had alleged that Cynthia Johnson's policy was delivered to her in Georgia.
Georgia Farm Bureau asserted that the trial court lacked in personam jurisdiction over Georgia Farm Bureau under Rule 4.2(a)(2), Ala. R. Civ. P., the Alabama long-arm rule, because Georgia Farm Bureau did not have "sufficient contacts" with Alabama, as required by that rule, because it neither transacted business in Alabama nor insured persons who were in Alabama when the insurance was issued. Georgia Farm Bureau asserted also that neither the Randolph Circuit Court nor any other court in Alabama was a proper venue for the case under § 6-3-7, Ala.Code 1975, because Georgia Farm Bureau did not do business by agent in Alabama.
In opposing the motion to dismiss, the plaintiffs did not offer any evidence or argument that Georgia Farm Bureau either transacted business in Alabama or insured persons who were in Alabama when the insurance was issued. Rather, first, the plaintiffs argued that they must be allowed to sue Georgia Farm Bureau in the Alabama courts because they were without a remedy in the Georgia courts. The plaintiffs argued that, because Georgia procedural law (§ 33-7-11, Ga.Code Ann. (2000)) conditioned a party's recovery of uninsured-motorist benefits on that party's first obtaining a judgment against the tortfeasor, and because the Georgia courts could not exercise in personam jurisdiction over the Alabama-resident-owner-operator for the Alabama accident, while Alabama *548 substantive law (§ 32-1-2, Ala.Code 1975) precluded the plaintiffs from first obtaining a judgment, grounded on simple negligence, against the owner-operator, the Georgia courts afforded the plaintiffs no remedy for the recovery of Donald Johnson's uninsured-motorist benefits from Georgia Farm Bureau. The plaintiffs further argued that, because Alabama procedural law did not condition the plaintiffs' recovery of uninsured-motorist benefits on their first obtaining a judgment against the owner-operator, the Alabama courts afforded the plaintiffs their only remedy for the recovery of such benefits.
Second, the plaintiffs argued that Georgia Farm Bureau had sufficient contacts with Alabama to confer in personam jurisdiction over Georgia Farm Bureau on the Alabama courts under subsection (I) of Rule 4.2(a)(2), Ala. R. Civ. P.:
"Though [Georgia Farm Bureau] has no agents in Alabama, and even though it sells no policies of insurance in the State of Alabama, it sells policies in each Georgia county, seventeen of which abut the Alabama-Georgia border. These policies, such as the one at bar, follow their insured from Georgia into foreign states such as Alabama. Clearly, a future consequence to be contemplated by this is that incidents could transpire within the State of Alabama necessitating the interpretation by Alabama courts of policies issued in Georgia. There is more than a reasonable potential for the terms of the Georgia insurance policy between Plaintiffs and [Georgia Farm Bureau] to apply to an automobile accident occurring in the State of Alabama involving a Georgia Farm Bureau insured or covered vehicle. Accordingly, the concepts of due process dove-tail well with a finding that [Georgia Farm Bureau] obtained `fair warning' through `minimum contacts' with the State of Alabama such as those outlined here and in the Statement of Facts above."
(Plaintiffs' brief in opposition to defendants' motion to dismiss (Exhibit D, petition for writ of mandamus).) The plaintiffs argued that a Georgia Farm Bureau Web site and a Georgia Farm Bureau weekly television show established that Georgia Farm Bureau had sufficient contacts with Alabama to confer in personam jurisdiction on the Alabama courts under Rule 4.2(a)(2)(I). The plaintiffs presented exhibits of the contents of the Georgia Farm Bureau Web site. (Exhibit D, supra.) The Web site stated that Georgia Farm Bureau maintained agents in each of the 17 Georgia counties abutting the Alabama line. It stated that "Farm Bureau is local, state, national, and international in scope and influence." It advertised that members of Georgia Farm Bureau automatically became members of the American Farm Bureau Federation. The Web site further advertised that low-cost long-distance telephone service was available to Georgia Farm Bureau members because of "the group purchasing power of Farm Bureau's 4.5 million member families nationwide." In addition, the plaintiffs presented evidence that Alabama Farm Bureau, another affiliate of American Farm Bureau Federation, offered low-cost long-distance telephone service to its members, who were Alabama residents. (Id.) Finally, the plaintiffs presented evidence that Georgia Farm Bureau broadcast a weekly half-hour television show into Alabama and other southeastern states. (Id.) The sole description of the content of the weekly television show in the materials before us appears in the exhibits downloaded by the plaintiffs from the Georgia Farm Bureau Web site:
"A weekly half-hour TV program, The Georgia Farm Monitor, is produced in the Farm Bureau TV studios and seen *549 in every TV market in Georgia from Atlanta to Valdosta.
"The show also covers major portions of South Carolina, Tennessee, Alabama Florida [sic]. Our reporters and photographers travel all over the state and nation to cover stories of interest to Farm Bureau members, farmers and consumers in this entertaining and informative 30 minute program.
"While the program focuses on Farm Bureau, the Georgia farmer and agriculture. ....national issues, consumer information and interesting feature stories are also part of the weekly broadcast."
(Tab "D," exhibit "A," p. 6, petition for writ of mandamus, dots in original.)
On the basis of the evidence of the Georgia Farm Bureau Web site, the Georgia Farm Bureau weekly television show, and the Alabama Farm Bureau Web site, the plaintiffs argued:
"[T]hrough Defendant's contacts via the web and through television broadcasting into the State of Alabama, business is solicited for Farm Bureau memberships in general[,] which increases the nationwide pooling of memberships, benefitting members in both Alabama and Georgia Farm Bureaus."
(Id.)
The plaintiffs responded to the assertion of Georgia Farm Bureau that venue was not proper anywhere in Alabama by arguing that venue was proper because the owner-operator and the site of the accident were located in the county of the forum.
The trial court denied the motion to dismiss without stating a rationale. (Exhibit A, petition for writ of mandamus.) Georgia Farm Bureau then moved the trial court to certify the interlocutory order denying the motion to dismiss in accordance with Rule 5, Ala. R.App. P., so that Georgia Farm Bureau could petition this Court for an interlocutory appeal of that order. (Exhibit F, petition for writ of mandamus.) The trial court did not certify the order within 28 days after denying the motion to dismiss. See Rule 5(a)(1), Ala. R.App. P. Georgia Farm Bureau then petitioned this Court for a writ of mandamus directing the trial court to dismiss the case.

Issue
The dispositive issue is whether the plaintiffs presented evidence establishing that Georgia Farm Bureau had contacts with Alabama sufficient to confer in personam jurisdiction on the Alabama courts under Rule 4.2(a)(2)(I), Ala. R. Civ. P. In the absence of in personam jurisdiction, the venue issue is immaterial.

Law
"The following principles are well established:
"`[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction. See Ex parte McInnis, 820 So.2d 795 (Ala.2001); Ex parte Paul Maclean Land Servs., Inc., 613 So.2d 1284, 1286 (Ala.1993)." `An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.'" Ex parte Lagrone, 839 So.2d 620, 623 (Ala.2002) (quoting Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002)). Moreover, "[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir.2002).'
"Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., [Ms. 1011586, February 21, 2003] 866 So.2d 519, 525 (Ala.2003)."
Ex parte Troncalli Chrysler Plymouth Dodge, Inc., 876 So.2d 459, 463 (Ala.2003).

*550 "Rule 4.2, Ala. R. Civ. P., extends the personal jurisdiction of Alabama courts to the limits of due process under the federal and state constitutions. Sieber v. Campbell, 810 So.2d 641 (Ala.2001). Rule 4.2(a)(2), Ala. R. Civ. P., Alabama's long-arm rule, sets out situations in which a nonresident defendant's contacts with this State are considered sufficient to subject the nonresident defendant to personal jurisdiction in an Alabama court. Subsection (I) of Rule 4.2(a)(2) contains a `catch-all' provision, which permits jurisdiction over a nonresident defendant whose contacts with this State do not fall into one of the situations listed in Rule 4.2(a)(2)(A)-(H)."
Elliott v. Van Kleef, 830 So.2d 726, 729 (Ala.2002). Rule 4.2(a)(2)(I) provides:
"(2) Sufficient Contacts. A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as a consequence of that person's
"....
"(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the constitution of this state or the Constitution of the United States."
In Elliott, 830 So.2d at 730-31, this Court explained:
"This Court has interpreted the due process guaranteed under the Alabama Constitution to be coextensive with the due process guaranteed under the United States Constitution. See Alabama Waterproofing Co. v. Hanby, 431 So.2d 141, 145 (Ala.1983), and DeSotacho, Inc. v. Valnit Indus., Inc., 350 So.2d 447, 449 (Ala.1977). See also Rule 4.2, Ala. R. Civ. P., Committee Comments on 1977 Complete Revision following Rule 4.4, under the heading `ARCP 4.2' (`Subparagraph (I) was included by the Committee to insure that a basis of jurisdiction was included in Alabama procedure that was coextensive with the scope of the federal due process clause....').
"The Due process Clause of the Fourteenth Amendment permits a forum state to subject a nonresident defendant to its courts only when that defendant has sufficient `minimum contacts' with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The critical question with regard to the nonresident defendant's contacts is whether the contacts are such that the nonresident defendant' "should reasonably anticipate being haled into court"' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The sufficiency of a party's contacts are assessed as follows:
"`Two types of contacts can form a basis for personal jurisdiction: general contacts and specific contacts. General contacts, which give rise to general personal jurisdiction consist of the defendant's contacts with the forum state that are unrelated to the cause of action and that are both "continuous and systematic." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); [citations omitted]. Specific contacts, which give rise to specific jurisdiction, consist *551 of the defendant's contacts with the forum state that are related to the cause of action. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Although the related contacts need not be continuous and systematic, they must rise to such a level as to cause the defendant to anticipate being haled into court in the forum state. Id.'
"Ex parte Phase III Constr., Inc., 723 So.2d 1263, 1266 (Ala.1998) (Lyons, J., concurring in the result). Furthermore, this Court has held that, for specific in personam jurisdiction, there must exist `a clear, firm nexus between the acts of the defendant and the consequences complained of.' Duke v. Young, 496 So.2d 37, 39 (Ala.1986). See also Ex parte Kamilewicz, 700 So.2d 340, 345 n. 2 (Ala.1997).
"In the case of either general in personam jurisdiction or specific in personam jurisdiction, `[t]he "substantial connection" between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State.' Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of the '"unilateral activity of another person or a third person."' Burger King, 471 U.S. at 475, 105 S.Ct. 2174, quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)."
In Burger King the United States Supreme Court explained:
"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.
"This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State. Thus where the defendant deliberately has engaged in significant activities within a State, or has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."
471 U.S. at 475-76, 105 S.Ct. 2174 (internal quotations and citations omitted). In the words of Quill Corp. v. North Dakota, 504 U.S. 298, 307, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), "if a foreign corporation purposefully avails itself of the benefits of an economic market in the forum State, it may subject itself to the State's in personam jurisdiction even if it has no physical presence in the State."

Analysis
The presence of Georgia Farm Bureau agents in the 17 counties that abut Alabama did not evidence contact with Alabama by Georgia Farm Bureau. While the plaintiffs argue that the presence of these agents should have caused Georgia Farm Bureau to anticipate that a Georgia citizen who purchased a Georgia Farm Bureau policy from one of these Georgia agents would enter Alabama, would suffer a traffic accident while in Alabama, and would put his Georgia Farm Bureau policy *552 at issue in a resulting lawsuit, the plaintiffs offered no evidence that the presence of Georgia Farm Bureau agents in the 17 Georgia counties abutting Alabama was in any way "'purposefully directed toward the forum State.'" Elliott, 830 So.2d at 731 (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. at 112, 107 S.Ct. 1026). The uncontroverted evidence established that Georgia Farm Bureau agents, including the Georgia Farm Bureau agents in the 17 Georgia counties abutting Alabama, sold policies only to Georgia residents. While Georgia Farm Bureau could well have anticipated that Georgia residents who purchased Georgia Farm Bureau policies in Georgia would enter Alabama and suffer traffic accidents here, these Alabama events would not be the acts of Georgia Farm Bureau. Rather, these events would be "`the unilateral [acts] of [other] person[s].'" Elliott, 830 So.2d at 731 (quoting Burger King, 471 U.S. at 475, 105 S.Ct. 2174, in turn quoting Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 417, 104 S.Ct. 1868). The unilateral act of a person other than Georgia Farm Bureau cannot constitute a sufficient contact by Georgia Farm Bureau with Alabama under Rule 4.2(a)(2)(I). Elliott, 830 So.2d at 731. Likewise, the maintenance of a Web site by Alabama Farm Bureau, an entity distinct from Georgia Farm Bureau, was the unilateral act of a person other than Georgia Farm Bureau, not attributable to it. Id.
While the Georgia Farm Bureau Web site could be accessed, and the weekly television show could be received, by Alabama residents, the evidence does not establish that, by either the Web site or the television show, Georgia Farm Bureau "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," Burger King 471 U.S. at 475, 105 S.Ct. 2174 (internal quotations omitted), or "purposefully avail[ed] itself of the benefits of an economic market in the forum State," Quill Corp., 504 U.S. at 307, 112 S.Ct. 1904. While the broadcast of the weekly television show into Alabama was a contact with Alabama and presumably was the purposeful act of Georgia Farm Bureau, the subject matter of the television show, "Farm Bureau, the Georgia farmer and agriculture. ....national issues, consumer information, and interesting feature stories," did not establish that Georgia Farm Bureau "`should reasonably anticipate being haled into court' in [Alabama]" as a result of the broadcast of the television show into Alabama. Elliott, 830 So.2d at 730 (quoting Burger King, 471 U.S. at 473, 105 S.Ct. 2174, in turn quoting World-Wide Volkswagen, 444 U.S. at 295, 100 S.Ct. 559). Therefore, this evidence was unavailing. Elliott, 830 So.2d at 730.

Conclusion
Because the plaintiffs failed to present evidence that Georgia Farm Bureau had contacts with Alabama sufficient to confer in personam jurisdiction over Georgia Farm Bureau upon the Alabama trial court under Rule 4.2(a)(2)(I), Ala. R. Civ. P., the trial court erred in denying the motion to dismiss filed by Georgia Farm Bureau. Therefore, we grant the petition and issue the writ of mandamus. We direct the trial court to vacate the order denying the motion to dismiss and to enter an order dismissing the case for lack of in personam jurisdiction.
PETITION GRANTED; WRIT ISSUED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.