3 So.3d 178 (2008)
Ex parte ALABAMA STATE BAR.
(In re Alabama State Bar v. Stuart Craig Dubose).
1061743.
Supreme Court of Alabama.
March 14, 2008.
Rehearing Denied August 15, 2008.
J. Anthony McLain, gen. counsel, and Jeremy W. McIntire, asst. gen. counsel, Alabama State Bar, Montgomery, for petitioner.
Clarence L. McDorman, Birmingham; and E. Farley Moody, Calera, for respondent.
BOLIN, Justice.
The Alabama State Bar ("the State Bar") petitions this Court for a writ of mandamus directing the Board of Disciplinary Appeals of the Alabama State Bar ("the Board of Appeals") to enter an order reversing its decision finding that the Disciplinary Board of the Alabama State Bar ("the Disciplinary Board") was divested of its jurisdiction to discipline Stuart Craig Dubose after Dubose assumed the bench as an incumbent circuit court judge for the First Judicial Circuit.
In April 2003 Cheryl Weaver asked Dubose, then a practicing attorney, to prepare and draft a will for Joseph J. Sullivan. Sullivan, an elderly widower, lived in Washington County and had no immediate family living nearby. Weaver had been *179 Sullivan's caretaker for more than a decade, and when Sullivan became ill he eventually moved in with Weaver, who continued to care for him. Weaver informed Dubose that Sullivan was dying and that he wanted to leave his entire estate to her. Sullivan's estate was substantial; it consisted of various bank accounts, stocks in various companies, and real property. Dubose drafted a will naming Weaver as the executor and sole beneficiary of Sullivan's estate. According to Dubose, Weaver also told him that she wanted him to be named in the will as the attorney for the estate. Dubose included in the will provisions naming himself as the successor personal representative as well as the attorney for the estate. Dubose stated that he explained to Weaver the proper procedure to effectuate the due execution of the will by Sullivan. He also prepared a certificate to be signed by Sullivan's physician stating that Sullivan was competent and directed Weaver to have it signed. Dubose did not meet with or speak to Sullivan regarding the will or its provisions before preparing the will.
Sullivan signed the will on April 11, 2003; he died on April 29, 2003. On May 6, 2003, Weaver and Dubose, apparently in anticipation of an action by Sullivan's heirs contesting the will, entered into a contingency contract whereby Dubose was employed to represent both Sullivan's estate and Weaver. Sullivan's estate and Weaver agreed to pay Dubose 33% from the proceeds of any settlement obtained before the filing of a will contest and 40% from the proceeds of any settlement obtained after the filing of any will contest. The agreement also provided that Sullivan's estate and Weaver would pay the cost of any investigation that might be required.
On August 15, 2003, Sullivan's heirs filed an action contesting his will. Dubose discovered during his representation of the estate and Weaver in the will contest that the notary public who notarized the physician's signature was not actually present when Sullivan's physician signed the certificate declaring that Sullivan was competent. Dubose deleted the notary's signature from the certificate because he believed that if it was discovered that the notary did not actually witness the physician signing the certificate it would "blow the whole case out of the water." However, Dubose subsequently deposed Sullivan's physician and verified that the physician had signed the certificate and that Sullivan was indeed competent at that time. The parties to the will contest ultimately settled the action, and the case was dismissed on February 14, 2005.
On February 14, 2005, Weaver moved the court to appoint Dubose as a coexecutor of the estate. Weaver and Dubose also petitioned the court for the admission to probate of Sullivan's will and for letters testamentary. The court granted the letters testamentary to Weaver and Dubose on that same date.
A dispute subsequently arose between Weaver and Dubose as to the fee due Dubose under the contingency contract. Dubose contended that he was entitled to 40% of the portion of the estate Sullivan received as part of the settlement, which was valued at approximately $2.5 million, including stock and land. Weaver contended that the stock and land were not to be included in calculating Dubose's fee and that he was entitled to only 40% of the cash assets of her portion of the estate. On February 18, 2005, Dubose filed a claim against Weaver and the estate, seeking a fee for his services as personal representative and attorney for the estate.[1] Despite *180 having filed a claim against Weaver and the estate, Dubose continued to represent Weaver and to serve as coexecutor of the estate. Dubose's claim was eventually settled by the parties, and the trial court, on October 2, 2006, entered an order naming Dubose as the sole executor of Sullivan's estate and awarding him fees for his service as personal representative and as attorney for the estate in the amounts of $127,630 and $969,992, respectively. The trial court granted letters testamentary to Dubose on that same date.
Before Dubose and Weaver settled Dubose's claim, an anonymous complaint was filed with the State Bar on May 10, 2005, alleging that Dubose had violated the Alabama Rules of Professional Conduct during his representation of Weaver and Sullivan's estate. On September 19, 2006, Dubose waived the filing of formal charges and entered a guilty plea to violating Rules 1.1, 1.4(b), 1.7(b), 1.8(c), 8.4(a), and 8.4(g), Alabama Rules of Professional Conduct. On October 4, 2006, the State Bar's Disciplinary Commission accepted Dubose's guilty plea and entered an order suspending him from the practice of law for 45 days. On October 19, 2006, this Court entered an order denying the Disciplinary Commission's request to suspend Dubose from the practice of law for 45 days, concluding that the requested discipline was insufficient. The next day, the State Bar filed formal charges against Dubose alleging violations of Rules 1.1, 1.4(b), 1.5(a), 1.7(a), 1.7(b), 1.8(c), 3.4(a), 3.4(b), 8.4(a), 8.4(c), 8.4(d), and 8.4(g), Alabama Rules of Professional Conduct.
In November 2006, Dubose was elected circuit judge for the First Judicial Circuit. He was sworn into office on December 22, 2006, and officially assumed the office of circuit judge on January 15, 2007. On February 8, 2007, Dubose moved the Disciplinary Board for a summary judgment on the complaint against him arguing, among other things, that the State Bar was divested of its jurisdiction to discipline him once he became an incumbent circuit judge. On February 13, 2007, the State Bar filed a response to Dubose's motion for a summary judgment, arguing that it retained jurisdiction over Dubose for alleged violations of the Rules of Professional Conduct occurring while he was engaged in the private practice of law before he assumed the office of circuit judge. On February 22, 2007, a panel of the Disciplinary Board entered an order denying Dubose's motion for a summary judgment.
On March 1, 2007, Dubose moved the Disciplinary Board to reconsider its denial of his summary-judgment motion. Following a hearing, the Disciplinary Board, on March 13, 2007, entered an order finding that the State Bar did have jurisdiction over Dubose to proceed with disciplinary proceedings for the alleged violations of the Rules of Professional Conduct occurring before Dubose assumed the office of circuit judge. The Disciplinary Board certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. On March 19, 2007, Dubose appealed the decision of the Disciplinary Board to the Board of Appeals.
The Board of Appeals issued a show-cause order on July 25, 2007, noting that an order denying a motion for a summary judgment is inherently "non-final" and cannot be made final by Rule 54(b) certification. See Continental Cas. Co. v. South-Trust Bank, N.A., 933 So.2d 337 (Ala. 2006). The Board of Appeals further concluded *181 that it had the discretion to treat the appeal as a petition for a writ of mandamus. F.L. Crane & Sons, Inc. v. Malouf Constr. Corp., 953 So.2d 366 (Ala.2006), and directed Dubose to answer why his appeal should not be treated as a petition for a writ of mandamus. After receiving responses from the parties, the Board of Appeals, on August 31, 2007, entered an order granting Dubose's petition for the writ of mandamus and finding that the Disciplinary Board did not have jurisdiction to continue the disciplinary proceedings against Dubose once he became an incumbent circuit court judge. The Board of Appeals ordered that all disciplinary proceedings against Dubose be stayed until such time as he is no longer serving as judge. This petition followed.

Standard of Review
This Court has stated:
"`[M]andamus is a drastic and extraordinary writ that will be issued only when there is: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Horton, 711 So.2d 979, 983 (Ala.1998). `Subject to certain narrow exceptions ..., the denial of a motion to dismiss or a motion for a summary judgment is not reviewable by petition for writ of mandamus.' Ex parte Liberty Nat'l Life Ins. Co., 825 So.2d 758, 761 (Ala.2002) (citing Ex parte Jackson, 780 So.2d 681, 684 (Ala. 2000)). One of the exceptions is the denial of a motion grounded on a claim of lack of personal jurisdiction, Ex parte Sekeres, 646 So.2d 640 (Ala.1994), Ex parte Paul Maclean Land Servs., 613 So.2d 1284 (Ala. 1993), and Ex parte Volkswagenwerk Aktiengesellschaft, 443 So.2d 880 (Ala. 1983)."
Ex parte Alloy Wheels Int'l, Ltd., 882 So.2d 819, 821-22 (Ala.2003). "Questions of law are reviewed de novo." Ex parte Terry, 957 So.2d 455, 457 (Ala.2006). Therefore, a petition for a writ of mandamus is the proper vehicle by which to review the State Bar's claim that the Board of Appeals erred in determining that it was divested of its jurisdiction to discipline Dubose once he assumed office as an incumbent circuit judge, and our review will be de novo.

Discussion
The issue whether the Disciplinary Board has jurisdiction to discipline an incumbent judge for an alleged violation of the Rules of Professional Conduct while the incumbent judge was engaged in the private practice of law presents a question of first impression.
The State Bar acknowledges that Rule 1(a)(2), Ala. R. Disc. P., divests it of the jurisdiction to discipline an incumbent judge for misconduct occurring while the judge is in office. Rule 1(a)(2) provides: "Incumbent Judges. Incumbent judges are not subject to the jurisdiction of the Disciplinary Commission or the Disciplinary Board of the Alabama State Bar." Indeed, the discipline of an incumbent judge for conduct occurring while in office is provided for by Art. VI, §§ 156 and 157, Ala. Const. of 1901. See also Alabama State Bar ex rel. Steiner v. Moore, 282 Ala. 562, 213 So.2d 404 (1968) (holding that the State Bar cannot discipline a judge during the term in which the judge is holding office for misconduct performed in a judicial capacity and that a judge can be disciplined only according to the exclusive method provided for in the constitution). Leaving the discipline of judges to the procedures prescribed in the constitution is of "fundamental soundness, and is essential *182 to the maintenance of an independent judiciary." In re Alonzo, 284 Ala. 183, 188, 223 So.2d 585, 590 (1969).
However, the State Bar contends that it retains jurisdiction over all disciplinary matters involving any member of the State Bar for violations of the Alabama Rules of Professional Conduct that were committed while the member was engaged in the practice of law. See generally Rule 1(a)(1), Ala. R. Disc. P. It is a compelling argument, especially where, as here, the violations, the institution of disciplinary procedures, and a guilty plea by Dubose all occurred prior to Dubose's taking office as a member of the judiciary. Implicit in the State Bar's argument is the fact that even though Dubose may hold judicial office, he nevertheless remains on the roll of attorneys and must be a member of the bar in order to hold judicial office. See In re Alonzo, 284 Ala. at 189, 223 So.2d at 592 ("When one is admitted to the bar of this state and licensed to practice law by this court, he remains enrolled as an attorney from that time on unless his right to practice is destroyed by a judgment of suspension or disbarment. True, during the time an attorney may hold certain judicial offices, his right to practice is suspended. He yet remains on the roll of attorneys of this court, and must be a member of the bar to be qualified to hold certain judicial offices.").[2] Specifically, the State Bar argues that its jurisdiction over Dubose attached on October 20, 2006, with the filing by the State Bar of formal charges alleging violations of the Rules of Professional Conduct while Dubose was engaged in the private practice of law and that it was not subsequently divested of that jurisdiction when he assumed the office of circuit judge. Reluctantly, we disagree.
In In re Alonzo, supra, Alonzo had been elected to the office of circuit judge at the November 1966 general election. After being elected judge but before being sworn into office, Alonzo devised a scheme to extort money from a particular party that would be appearing in his court. Once on the bench, Alonzo forced the extortion by entering unfavorable judgments against the party being extorted. Alonzo's scheme was discovered, and the State Bar brought disciplinary action against him. However, before the State Bar took disciplinary action against Alonzo, a judgment of impeachment was rendered against him, and he was removed from office.
This Court considered the issue whether the State Bar could proceed with disciplinary action against Alonzo. In holding that the State Bar could proceed with disciplinary action against Alonzo, the Court noted that the important constitutional issue of maintaining an independent judiciary was not an impediment to the State Bar's bringing disciplinary action against Alonzo because he had been impeached and removed from office. In re Alonzo, supra. Further, this Court stated:
"Where, as here, a member of the bar holding judicial office commits fraudulent, corrupt, and immoral acts by originating an extortion plan prior to entering upon a judgeship, and executes that plan after assuming the powers of the judgeship, by actions that cannot by any stretch of the imagination, rationally be deemed judicial or official acts, and where such judge has been removed from office by due and legal impeachment proceedings prior to disciplinary action by the Bar Association, it would indeed be sadly anomalous to conclude that the Bar could not cleanse itself of *183 such unfit member on any theory that judicial robes protected such conduct."
284 Ala. at 190, 223 So.2d at 592.
This Court's holding in Alonzo is embodied in Rule 1(a)(3), Ala. R. Disc. P., which, we conclude, controls the present situation. Rule 1(a)(3) provides:
"Former Judges. Former judges who have resumed their status as lawyers are subject to the jurisdiction of the Supreme Court of Alabama and the Disciplinary Commission and the Disciplinary Board of the Alabama State Bar for misconduct that occurred while they were judges, before they became judges, or after the resumption of the practice of law and that would have been grounds for lawyer discipline."
(Emphasis added.) It is clear from the plain and unambiguous language of Rule 1(a)(3), Ala. R. Disc. P., that the State Bar does not currently have the jurisdiction to discipline Dubose so long as he is serving as an incumbent judge; however, at such time when Dubose becomes a "former judge" and is no longer serving in a judicial capacity, the State Bar would then regain jurisdiction to discipline Dubose for those acts of misconduct that occurred before he became a judge. Therefore, Dubose is entitled to have the disciplinary proceedings initiated against him by the State Bar stayed until such time as he is no longer serving in his capacity as circuit judge.
Because the State Bar has failed to establish a clear legal right to the relief sought, we deny the petition for the writ of mandamus.
PETITION DENIED.
SEE, WOODALL, STUART, and PARKER, JJ., concur.
COBB, C.J., and LYONS, SMITH, and MURDOCK, JJ., dissent.
LYONS, Justice (dissenting).
I respectfully dissent.
Sections 156 and 157 of the Alabama Constitution of 1901 create the Judicial Inquiry Commission and the Court of the Judiciary, respectively, and prescribe the procedures for hearing complaints involving charges that a judge has violated any of the Canons of Judicial Ethics, has been guilty of misconduct in office, has failed to perform his or her duties, or has become physically or mentally unable to perform his or her duties. All of these charges relate to conduct occurring while holding judicial office.
Section 158 of the Alabama Constitution of 1901 recognizes the applicability to all appellate court judges and justices of provisions for impeachment found at § 173, in addition to the authority of the Court of the Judiciary. The grounds for impeachment as set forth in § 173 consist of
"willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office, or committed under color thereof, or connected therewith...."
All of these charges relate to conduct occurring while holding office.
Nowhere in the Alabama Constitution is there any provision describing the sections dealing with removal of a judge from office for conduct occurring while holding office as exclusive of any other proceedings that could lead to removal from office based on a judge's conduct before taking office. See Sullivan v. State ex rel. Attorney General of Alabama, 472 So.2d 970, 973 (Ala. *184 1985) ("Neither of these Amendments [creating the Judicial Inquiry Commission and the Court of the Judiciary] indicate they vest exclusive jurisdiction in these bodies to remove sitting judges from office.").
Judge Dubose relies upon Alabama State Bar ex rel. Steiner v. Moore, 282 Ala. 562, 213 So.2d 404 (1968), as authority for the proposition that the State Bar can take no action that could indirectly lead to his removal from office. Judge Dubose quotes the following from Moore where, after the Moore Court restated the rule that once a judge is inducted into an office he was competent to hold when elected, he can be ousted or removed only in the manner prescribed by the Constitution, the Court stated:
"This, in substance, means that there can be no collateral approach to ousting a judge, for such prerogative is reserved to the State by the Constitution. In effect, the action of the [State] Bar amounts to an attempt to remove a judge by indirection rather than by constitutional means."
282 Ala. at 565, 213 So.2d at 407. The next sentence puts the previous observation in proper context. The Moore Court stated:
"Here, the acts complained of were not by a judge in his alleged capacity as a lawyer, but were judicial actions. Erroneous or reprehensible as they may be, the conduct complained of was not conduct unbecoming an attorney at law enumerated by Rule 36, Section A of the Rules Governing Conduct of Attorneys in Alabama."[3]
282 Ala. at 567, 213 So.2d at 407 (emphasis added). Because Moore did not relate to conduct prior to taking judicial office and because the Constitution nowhere proscribes any proceedings against an incumbent judge for conduct prior to taking office that could result in his or her removal from office, it is inappropriate to limit the jurisdiction of the State Bar over incumbent judges in disregard of this crucial distinction.
The Board of Appeals relied upon Rule 1(a)(2), Alabama Rules of Disciplinary Procedure, which states:
"Incumbent Judges. Incumbent judges are not subject to the jurisdiction of the Disciplinary Commission or the Disciplinary Board of the Alabama State Bar."
This rule should not be read as restricting the jurisdiction of the State Bar in a manner inconsistent with the Alabama Constitution and beyond the context of Moore, which address the conduct of judges after assuming office. Treating the rule as preventing the State Bar from disciplining a judge for conduct that occurred before taking office gives the judge an unwarranted immunity. I agree with the sound analysis of the Supreme Court of Missouri in In re Mills, 539 S.W.2d 447, 449-50 (Mo. 1976), where, after acknowledging contrary authority and rejecting it as unpersuasive, the court stated:
"Here, we are presented with an action to discipline a person, now serving as a judge, for misconduct committed while he was a lawyer and before he became a judge. Does his position on the bench render him immune to discipline for violation of the Code of Professional Responsibility applicable to all persons licensed to practice law in this state? Respondent argues that since he may not practice law while a judge, he may not be disciplined while a judge for misconduct *185 committed while a lawyer. Although he may not practice law while a judge, he still holds a license to practice law (a qualification he must have to hold the office of judge), he is still a lawyer, and if he has violated the Code of Professional Responsibility he is, as an officer of this court, amenable to discipline even though it result directly in cancellation of his license and, thereby, lead indirectly to his removal from office. He may not take refuge in a judicial office from discipline for prior misconduct, the effect of which would be removal of one of his qualifications for occupying the refuge. To permit the use of a judicial office as such a sanctuary would be a travesty upon justice."
(Emphasis added.)
The main opinion relies upon Rule 1(a)(3), Alabama Rules of Disciplinary Procedure, which provides:
"Former Judges. Former judges who have resumed their status as lawyers are subject to the jurisdiction of the Supreme Court of Alabama and the Disciplinary Commission and the Disciplinary Board of the Alabama State Bar for misconduct that occurred while they were judges, before they became judges, or after the resumption of the practice of law and that would have been grounds for lawyer discipline."
This rule dealing with former judges, a circumstance not here presented, merely codifies the holding of this Court in In re Alonzo, 284 Ala. 183, 223 So.2d 585 (1969), in which we rejected a former judge's plea of immunity from State Bar disciplinary proceedings. In Alonzo, we observed:
"When one is admitted to the bar of this state and licensed to practice law by this court, he remains enrolled as an attorney from that time on unless his right to practice is destroyed by a judgment of suspension or disbarment. True, during the time an attorney may hold certain judicial offices, his right to practice is suspended. He yet remains on the roll of attorneys of this court, and must be a member of the bar to be qualified to hold certain judicial offices."
284 Ala. at 189, 223 So.2d at 592. Rejecting the plea of immunity, the Alonzo Court held:
"Where, as here, a member of the bar holding judicial office commits fraudulent, corrupt, and immoral acts by originating an extortion plan prior to entering upon a judgeship, and executes that plan after assuming the powers of the judgeship, by actions that cannot by any stretch of the imagination, rationally be deemed judicial or official acts, and where such judge has been removed from office by due and legal impeachment proceedings prior to disciplinary action by the Bar Association, it would indeed be sadly anomalous to conclude that the Bar could not cleanse itself of such unfit member on any theory that judicial robes protected such conduct."
284 Ala. at 190, 223 So.2d at 592. The main opinion expands Rule 1(a)(3) beyond its field of applicability and, in so doing, ignores the crucial distinction between conduct occurring before a lawyer enters upon judicial office, over which the Bar has authority, and conduct occurring after the lawyer becomes a judge, over which the Bar has no jurisdiction.
A majority of this Court disagrees with my interpretation of the State Bar's authority, and I urge the immediate amendment of Rule 1 of the Alabama Rules of Disciplinary Procedure to protect the public from judges who were unethical lawyers and relieve this Court of further embarrassment from the absurd consequences of its own rules.
COBB, C.J., and SMITH and MURDOCK, JJ., concur.
*186 MURDOCK, Justice (dissenting).
I join Justice Lyons's dissenting opinion. I would add the following:
The fact that it is the State Bar that would enforce the Rules of Professional Conduct and possibly perform the disciplinary act of removing Dubose from the roll of licensed attorneys for misconduct committed by him while he was an attorney and before he took judicial office does not mean that Dubose would be removed from his judicial office in a manner contrary to the Alabama Constitution. To say that the State Bar may remove Dubose from the roll of licensed attorneys is not to say that it can take the further step of acting upon that development and ousting Dubose from judicial office. Clearly, the authority to do so lies elsewhere.
Authority and responsibility for addressing violations of the Rules of Professional Conduct by attorneys while engaged in the practice of law, however, is in the State Bar. The Judicial Inquiry Commission and the Court of the Judiciary have no such authority. I am confident that this Court, in promulgating the Rules of Professional Conduct and the Rules of Disciplinary Procedure, did not intend for an attorney to be able to postpone or even avoid altogether any real consequence for his violation of the former because he succeeds in being appointed or elected to a judgeship in the interval between his commission of an offense and disciplinary action by the State Bar. Cf. Ex parte Berryhill, 801 So.2d 7, 10 (Ala.2001)("`In deciding between alternative meanings..., we will not only consider the results that flow from assigning one meaning over another, but will also presume that the legislature intended a rational result, one that advances the legislative purpose in adopting the legislation, that is "workable and fair," and that is consistent with related statutory provisions.' John Deere Co. v. Gamble, 523 So.2d 95, 100 (Ala.1988) (citations omitted)."); Karrh v. Board of Control of Employees' Ret. Sys. of Alabama, 679 So.2d 669, 671 (Ala.1996) (to similar effect); League of Women Voters v. Renfro, 292 Ala. 128, 131, 290 So.2d 167, 169 (1974) ("Where there is doubt as to the legislative intent in a statute, weight will be given to the practical effect which a proposed construction will have." (citations omitted)).
NOTES
[1] At some point that is not entirely clear from the record before this Court, the matter of Sullivan's estate was transferred from the Washington Circuit Court to the Mobile Circuit Court.
[2] Section 146, Ala. Const. of 1901 (Off.Recomp.), provides that "[j]udges of the supreme court, courts of appeals, circuit court, and district court shall be licensed to practice law in this state...."
[3] The Rules Governing Conduct of Attorneys in Alabama were superseded by the Code of Professional Responsibility on October 1, 1974, which in turn was superseded by the Rules of Professional Conduct on January 1, 1991.