898 F.2d 589
 16 Fed.R.Serv.3d 980
 Jeffrey R. HORN, et al., Plaintiffs,
v.
TRANSCON LINES, INC., et al., Defendants.
R.L. JEFFRIES TRUCKING CO., INC., Defendant and Third-Party Plaintiff,
v.
Mary F. THURMOND, Personal Representative of the Estate of
Thomas B. Thurmond, Third-Party Defendant and
Fourth-Party Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Fourth-Party Defendant-Appellant.
 No. 89-1747.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 23, 1990.
Decided April 2, 1990.
 
 Stephen H. Thomas, Statham, Johnson & McCray, F. Stephen Sheets, Hewins & Hewins, Evansville, Ind., for Jeffrey R. Horn, Lauri B. Horn and R.L. Jeffries Trucking Co., Inc.
 Donald R. Wright, Wright, Evans & Daly, Evansville, Ind., for Transcon Lines, Inc., Keystone Lines and Liberty Mut. Ins. Co.
 David V. Miller, Bowers, Harrison, Kent & Miller, Evansville, Ind., Henry C. Neel, Neel & Wilson, Henderson, Ky., for Mary F. Thurmond.
 Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 Thomas B. Thurmond, who drove his own truck for a living, leased the rig and his services to Transcon Lines, Inc., which operates nationwide. When Transcon did not have a load for him at the place he dropped off the last one, Thurmond could do three things: first, arrange with Transcon to sublease the rig to another carrier that had cargo needing transportation (that is, enter into a trip lease); second, take the truck empty to a place where Transcon had cargo (dead-heading, called bobtailing if the tractor travels without trailer); third, go home to Kentucky and wait for instructions.
 
 
 2
 Transcon provides insurance when the driver is carrying its loads. Drivers must arrange their own insurance when trip-leasing, deadheading, and bobtailing. Liberty Mutual Insurance Company of Boston issued to Transcon a master policy covering lessors' deadheading and bobtailing, which Transcon offered to its drivers at $22 per month. Thurmond accepted the offer, and Transcon sent a certificate of insurance from its California office to his old Kentucky home.
 
 
 3
 Thurmond's lease with Transcon gave it the right to veto a driver's proposed trip leases with another carrier. Indeed, under the ICC's regulations, a trucker could do no more than propose a sublease to the lessor, which must make the formal arrangements. One carrier for which Transcon issued a standing ban is R.L. Jeffries Trucking Company of Indiana. (Transcon as lessor is responsible for state road and gas taxes; Jeffries apparently refused to reimburse Transcon for these.) Without telling Transcon, Thurmond subleased his rig to Jeffries in October 1985 and was carrying one of its loads when the tractor left the road in southern Indiana. Thurmond died; Jeffrey Horn, a passenger in the cab, was seriously injured.
 
 
 4
 Horn and spouse filed this diversity action against Transcon and Jeffries, seeking compensation for his injuries. Allstate Insurance Company, the Horns' personal insurer, joined the suit as subrogee. Jeffries filed a third-party action against Thurmond's estate, seeking to recover for any sums it might be required to pay Horn on account of Thurmond's negligent driving. The estate tendered the defense to Liberty Mutual, which declined on the ground that its policy covered only bobtailing and deadheading. The estate then added Liberty Mutual as an additional defendant, asking the court to declare that it had to defend the suit, indemnify the estate for any damages due to Jeffries, and compensate the estate for the value of Thurmond's lost truck and cargo. Liberty Mutual and the estate filed cross-motions for summary judgment, which the district court resolved in advance of the main action.
 
 
 5
 The policy Liberty Mutual issued to Transcon covers only deadheading and bobtailing. Both expected the driver to arrange for insurance in trip leases, probably through the carrier supplying the load. The certificate Liberty Mutual wrote, and which Transcon sent to Thurmond, did not describe the limitations on the coverage but said that the full terms could be found in the master policy. The estate argued, and the district court held, that California law applies because the master policy is held by a California corporation. California law requires a certificate to state the limitations on coverage. Cal.Ins.Code Sec. 383.5, incorporating Sec. 381. The district court held that this rule applies and that despite Cal.Ins.Code Sec. 384 a reference in the certificate to the master policy is insufficient. The court then directed the entry of judgment to allow an immediate appeal.
 
 
 6
 The parties briefed the choice-of-law question and the meaning of California law. The first question in every case, which the court must ask even if the parties do not, is whether it has jurisdiction. We do not have jurisdiction and so shall not discuss the merits. Three jurisdictional problems loom: the terms of the judgment, the adequacy of the direction for its entry, and the fact that the appeal concerns a third-party dispute that will be influenced by the disposition of the main litigation.
 
 
 7
 1. The judgment entered by the district court provides:
 
 
 8
 The Court expressly determines that there is no just reason for delay and expressly directs entry of final judgment on Third Party Defendant and Third Party Plaintiff, Mary F. Thurmond's, Motion for Summary Judgment against Third Party Defendant, Liberty Mutual Insurance Company Boston, with regard to liability and cargo coverage.
 
 
 9
 This judgment does not set out the relief to which the prevailing party is entitled and therefore is not "final". Although Fed.R.Civ.P. 54(b) lets the court make final a judgment covering fewer than all of the claims and parties, it does not allow a court to dispense with other essential ingredients of judgments. Judgments must award relief. This one does not. A document saying that judgment is entered, but not saying who is entitled to what from whom, is ineffectual. Reytblatt v. Denton, 812 F.2d 1042 (7th Cir.1987).
 
 
 10
 The judge must have meant to enter a declaratory judgment establishing the entitlements of the estate vis-a-vis the insurer, but he did not. See Azeez v. Fairman, 795 F.2d 1296, 1297 (7th Cir.1986). An opinion is not a sufficient substitute for a judgment, for the judgment must be self-contained, see Fed.R.Civ.P. 58. An opinion explains the reasons for entering a judgment but is not itself a source of legal obligations. Eakin v. Continental Illinois National Bank & Trust Co., 875 F.2d 114, 118 (7th Cir.1989); Bethune Plaza, Inc. v. Lumpkin, 863 F.2d 525, 527-28 (7th Cir.1988). Yet even the opinion is ambiguous. Logically the court must have meant to provide that Liberty Mutual had to defend the estate, pay for the truck and cargo, and reimburse the estate for any damages; the opinion does not say so, however. Although missing terms do not prevent finality when everything is clear, Chaka v. Lane, 894 F.2d 923, 924 (7th Cir.1990); Soo Line R.R. v. Escanaba & Lake Superior R.R., 840 F.2d 546, 549 (7th Cir.1988), one of the terms missing here--how much?--is important for reasons that we get to shortly.
 
 
 11
 2. Neither the judgment nor the accompanying opinion mentions Rule 54(b) or explains why the court is authorizing an appeal by one party at the outset of the litigation. Rule 54(b) departs from the norm of one appeal per case, a norm that prevents duplicative and time-consuming appeals. Because the Rules of Civil Procedure allow a single suit to resolve many claims among many parties--disputes that would have been separate cases under prior practice--it is useful to have a method to divide the litigation once again into separate units that could have stood alone. That way a discrete dispute may be finally resolved even though additional controversies await disposition. See Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); Exchange National Bank v. Daniels, 763 F.2d 286, 290-92 (7th Cir.1985); Jack Walters & Sons Corp. v. Morton Building, Inc., 737 F.2d 698, 702-03 (7th Cir.1984).
 
 
 12
 The tension between the presumptive rule of one appeal per case and the utility of segregating separate claims for immediate appeal makes it important to define a "claim" with care, lest the exception swallow the rule. We have done this by deciding in Jack Walters and other cases that different theories of relief are one "claim", and that when the questions remaining in the district court factually overlap those on appeal, presenting a specter of sequential appellate resolution, the appeal is impermissible. See also, e.g., Automatic Liquid Packaging, Inc. v. Dominik, 852 F.2d 1036 (7th Cir.1988); FDIC v. Elefant, 790 F.2d 661, 664 (7th Cir.1986); Minority Police Officers Ass'n v. South Bend, 721 F.2d 197 (7th Cir.1983). Even when claims are separate, an appeal ought not follow as of course. The possibility that developments in the litigation may moot a claim suggests that appellate resolution be deferred. McMunn v. Hertz Equipment Rental Corp., 791 F.2d 88, 90 (7th Cir.1986); United States General, Inc. v. Albert, 792 F.2d 678, 681 n. 3 (7th Cir.1986); Spiegel v. Tufts College, 843 F.2d 38, 44-45 (1st Cir.1988); United States Fire Insurance Co. v. Smith Barney, Harris Upham & Co., 724 F.2d 650, 653 (8th Cir.1983); Brunswick Corp. v. Sheridan, 582 F.2d 175, 184 (2d Cir.1978) (Friendly, J.). A significant possibility that the claim will go away (as it would if, for example, the court should conclude that Thurmond was not negligent) makes improvident the parties' and the judges' investment of resources to produce a speedy appellate ruling.
 
 
 13
 Resolution of this tension, as of so many other elements of litigation, is committed to the informed discretion of the district judge. Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). Discretion carefully exercised is rarely upset. First, though, we must be confident that discretion has been exercised. When the district judge does not explain his decision, an appellate court should be skeptical. Glidden v. Chromalloy American Corp., 808 F.2d 621, 624 (7th Cir.1986); United States General, Inc. v. Joliet, 598 F.2d 1050, 1051 n. 1 (7th Cir.1979); COMPACT v. Nashville, 786 F.2d 227, 230-31 (6th Cir.1986); Arlinghaus v. Ritenour, 543 F.2d 461, 464 (2d Cir.1976). Cf. Principal Mutual Life Insurance Co. v. Cincinnati TV 64 Ltd., 845 F.2d 674, 676 (7th Cir.1988). Courts may not accommodate attorneys just because they want to appeal immediately; a separate judgment under Rule 54(b) multiplies the costs of litigation for opposing parties and for the appellate court, and these interests deserve thoughtful consideration. Explanation produces intellectual discipline; a judge who sets down in writing (or articulates in court) the reasons pro and con, and his method of reaching a decision, must work through the factors before deciding, and we then may be sure that the conclusion is based on appropriate considerations even if not necessarily one we would have reached ourselves.
 
 
 14
 Bank of Lincolnwood v. Federal Leasing, Inc., 622 F.2d 944 (7th Cir.1980), holds that the absence of an explanation is not a jurisdictional bar to appeal, at least when the explanation may be deduced from the record. See also Local P-171 v. Thompson Farms Co., 642 F.2d 1065, 1072 n. 8 (7th Cir.1981). An unexplained separate judgment does not compel us to resolve the case on the merits, however. We may remand so that the district court may explain its reasons, after which we may examine them using the standards of Curtiss-Wright. Or we may conclude that so far as the record and the presentations of the parties reveal, the entry of a Rule 54(b) judgment is an abuse of discretion even if resort to that device could have been supported in other circumstances. The latter course is appropriate: the parties and district judge have advanced no reasons why this portion of the case should be resolved on appeal immediately. Potential mootness (if Thurmond's estate should be absolved) augurs against immediate appeal. On top of that, for the reasons that follow there is substantial doubt that the insurance dispute could be resolved now, no matter what.
 
 
 15
 3. The district judge apparently decided three things: that Liberty Mutual must defend the Thurmond estate; that Liberty Mutual must reimburse the estate for the value of the truck and its cargo, without regard to Thurmond's fault; that Liberty Mutual must indemnify the estate should Thurmond be held liable to Jeffries. (For the source of the "apparently" see section 1 above.) Five things affecting Liberty Mutual remain to be determined in the litigation: (i) the amount of money it will take to defend the estate, which turns on such things as whether the case settles; (ii) the value of the truck and cargo; (iii) whether Thurmond was negligent and, if so, (iv) the amount due to Jeffries; (v) whether Liberty Mutual refused in bad faith to settle the underlying litigation, the subject of an additional claim the Thurmond estate is pursuing (and which the district judge's opinions do not mention). Although the primary suit, by Horn against Transcon and Jeffries, has been settled, the claim by Jeffries against the Thurmond estate, the one affecting Liberty Mutual's exposure, is unresolved. So is the bad-faith claim by the estate.
 
 
 16
 Rule 54(b) allows the district court to enter a final judgment when it has resolved all claims concerning a single party, or has wrapped up a single claim with respect to all parties. Because the bad-faith claim is unresolved, the judgment did not dispose of all claims concerning Liberty Mutual. Moreover, the bad-faith claim probably means that the judgment does not dispose of all parties' entitlements concerning any single "claim". As we mentioned above, this court interprets "claim" in Rule 54(b) to include all elements of a case with sufficient factual and legal overlap that they could generate successive appeals on the same topic. Theories of relief are not separate "claims" under Rule 54(b) even if pleaded in separate counts. The bad-faith claim is but one theory supporting the estate's recovery from Liberty Mutual, and it bids well to generate additional appeals. If held liable to the estate on a theory of bad-faith-refusal-to-settle, Liberty Mutual could appeal on the ground that its policy does not cover trip-leasing. If we were to hold today that the policy does cover the Jeffries trip lease, Liberty Mutual could appeal tomorrow on the ground that it does not so clearly cover the trip lease that the denial of coverage was in bad faith. That is only one of the links among the estate's theories of recovery, and the overlap prevents a separate appeal.
 
 
 17
 Even if we were to discard the factual-overlap approach to defining a "claim", the disposition would be of doubtful finality. Because the rationale of Rule 54(b) is that modern practice allows the joinder in one suit of claims that could be stand-alone litigation, the best way to determine whether the disposition of a claim is sufficiently "final" to authorize immediate appeal is to ask whether it would count as a "final decision" in a hypothetical independent case. That approach avoids multiplying the number of different definitions of finality--a term hard enough to cope with when it has only one definition! It also has substantial support from Mackey and, e.g., Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). (Yes, the same Liberty Mutual Insurance Co., which did not flag the jurisdictional problem for the Court in Wetzel any more than it did here.) Mackey remarked that the rule "does not relax the finality required of each decision, as an individual claim, to render it appealable, but it does provide a practical means of permitting an appeal to be taken from one or more final decisions on individual claims, in multiple claims actions, without waiting for final decisions to be rendered on all the claims in the case." 351 U.S. at 435, 76 S.Ct. at 899 (emphasis in original). Although Rule 54(b) was amended to alter one aspect of the decision in Mackey (about final decision of all claims concerning a single party), the amendment does not alter the conclusion that a single claim is appealable only if its disposition meets the standards of finality governing independent litigation. Wetzel, 424 U.S. at 743 n. 3, 96 S.Ct. at 1206 n. 3.
 
 
 18
 A judgment declaring that an insurance company is obliged to defend and indemnify a person is "final" and appealable in stand-alone litigation, even though the amount of the indemnity remains to be quantified and there will never be a payment if the plaintiff loses his case against the insured person. Courts regularly hear declaratory judgment actions, as independent litigation between the insurance company and the person claiming to be insured, while the merits of the tort action proceed in another forum. A conclusive resolution of the duty to defend and indemnify is accordingly appealable under Rule 54(b), if the disputes should happen to be joined in a single action, as we held in McMunn.
 
 
 19
 The obligation to defend and indemnify against tort litigation does not stand alone in this suit, however. Thurmond's estate seeks compensation from Liberty Mutual for the value of the truck and its cargo, a first-party dispute rolled together with the defend-and-indemnify dispute. And the dispute about coverage for the value of truck and cargo is not final, because Liberty Mutual's obligation to the estate has not been liquidated. A decision establishing liability but leaving damages to be resolved is not final and may not be appealed under Rule 54(b). Wetzel, 424 U.S. at 742-44, 96 S.Ct. at 1205-07. Although we have held that a case may come up under Rule 54(b) when the computation of damages is a ministerial act, a foregone conclusion, see Parks v. Pavkovic, 753 F.2d 1397, 1401-02 (7th Cir.1985), the record does not inform us whether the amount of compensation for the value of the truck and cargo is undisputed or otherwise something that will be determined mechanically.
 
 
 20
 Liberty Mutual's best argument (if it had made any) would be based on a sentence in McMunn stating that "unless the application of [Rule 54(b) ] is to become even more complex than it is already, a judgment that is only partially contingent should be held to be within the rule's scope and hence appealable to us", 791 F.2d at 91. This sentence was not necessary to the disposition of McMunn, because a defend-and-indemnify judgment would be deemed final in independent litigation. To the extent the court was suggesting that a final decision on part of a single claim for relief may be appealed under Rule 54(b), and bring the rest of the claim up too, it is in substantial tension with the holdings of Mackey, Wetzel, and Local P-171, 642 F.2d at 1069 ("[a]n order is determined to be 'final' ... by reference to the normal standards of Sec. 1291"), none of which the opinion mentions.
 
 
 21
 It is hard to know which rules produce simplicity and which complexity. Both Mackey and Wetzel sought to simplify the administration of Rule 54(b) by absorbing the same doctrines of "finality" that govern appeals in one-claim cases. Any step away from a uniform definition of finality, in the direction of a conclusion that "just a little" non-finality will not block an appeal under Rule 54(b), requires the courts to maintain multiple lines of precedents. There would be one under Rule 58 and 28 U.S.C. Sec. 1291, governing most appeals, and another under Rule 54(b). "How non-final is too non-final?" does not admit of a simple answer. We have our doubts that the inquiry is feasible, if feasible desirable, or if desirable legally authorized. Civil Rule 82 and Appellate Rule 1(b) say that the rules do not increase jurisdiction, and the source of appellate jurisdiction here is Sec. 1291, which governs appeals from all "final decisions". That implies one standard of finality. "The District Court cannot, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of Sec. 1291." Mackey, 351 U.S. at 437, 76 S.Ct. at 900 (emphasis in original). As Wetzel holds, a decision not quantifying damages is not final, and under Sec. 1291 a decision resolving one theory of recovery but leaving others open also is not final.
 
 
 22
 This case is not the occasion for a "final decision" on the subject, however. Even if we were to take the sentence in McMunn for all it could be worth, it would still be necessary to conclude that the district judge acted prudently in entering a Rule 54(b) judgment. Curtiss-Wright, 446 U.S. at 10, 100 S.Ct. at 1466; Mackey, 351 U.S. at 436, 76 S.Ct. at 900. That a particular step may be authorized in some cases does not mean that it is appropriate in every case. A congeries of considerations, including the pendency of the estate's bad-faith claim, the fact that we have no idea whether damages will be hard or simple to compute, and the fact that the district judge did not give a reason for entering a Rule 54(b) judgment (a judgment that does not identify the relief to which the estate is entitled), persuades us that the district court abused its discretion. We accordingly vacate the Rule 54(b) judgment and dismiss the appeal for want of jurisdiction.