933 So.2d 337 (2006)
CONTINENTAL CASUALTY COMPANY
v.
SOUTHTRUST BANK, N.A.
1041136.
Supreme Court of Alabama.
January 6, 2006.
Jonathan W. Young and Meghan M. Hubbard of Wildman, Harrold, Allen & Dixon, Chicago, Illinois; Elizabeth W. McElroy of Baxley, Dillard, Dauphin, McKnight & Barclift, Birmingham; and Thomas A. Radney of Radney & Radney, LLC, Alexander City, for appellant.
Victor L. Hayslip and Jon H. Patterson of Burr & Forman, LLP, Birmingham, for appellee.
PER CURIAM.
Skilstaf, Inc., initiated a civil action against SouthTrust Bank, N.A., and Continental Casualty Company, seeking to enjoin Continental from drawing on, and SouthTrust from honoring, a letter of credit (hereinafter "the LC"). The LC was established by SouthTrust at Skilstaf's request *338 for the benefit of Continental. Continental filed a cross-claim against SouthTrust, alleging breach of contract, fraud, and negligence, and that SouthTrust's refusal to honor Continental's sight draft on the LC violated § 7-5-101 et seq., Ala. Code 1975. SouthTrust answered, denying that it had wrongfully refused to honor Continental's sight draft.
SouthTrust and Continental each moved for a summary judgment on Continental's cross-claim. After conducting a hearing, the trial court entered a summary judgment for SouthTrust and denied Continental's motion. The trial judge certified the order as final pursuant to Rule 54(b), Ala. R. Civ. P. Continental appeals. We reverse and remand.

Facts
Skilstaf's claim arose out of workers' compensation insurance policies issued by Continental to Skilstaf from 1996 to 2001. Skilstaf's workers' compensation program was administered under certain claim-service agreements between Skilstaf and Continental. Skilstaf secured its obligations under the claim-service agreements with, among other things, the LC, which was in the amount of $810,000, issued by SouthTrust in favor of Continental. The LC, No. 00.OD.02804, was issued on December 14, 2000.
The beneficiary of the LC was "Continental Casualty Company, c/o Risk Management Group, CNA Plaza, 333 S. Wabash, Chicago, IL 60685, Attn: Contract Administration"; the account party was "Skilstaf, Inc., 860 Airport Drive, Alexander City, AL 35010."
The first two paragraphs of the LC stated:
"We have established this Irrevocable Letter of Credit in your favor for drawings up to U.S. $810,000.00 effective December 14, 2000 and expiring at SouthTrust Bank, International Department, 112 North 20th Street, Birmingham, AL 35203, with our close of business on December 14, 2001.
"We hereby undertake to promptly honor your sight draft(s) drawn on us, indicating our Credit No. 00.OD.02804, for all or any part of this Credit if presented at 112 North 20th Street, Birmingham, AL 35203, Attention: International Department on or before the expiration date or any automatically extended date."
The LC also stated: "This credit is subject to the Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce, Publication No. 500 . . . ." The LC had an expiration date of December 14, 2001, but was automatically renewed each year unless SouthTrust notified Continental at least 60 days before the expiration date that SouthTrust elected not to renew.
On September 22, 2003, SouthTrust notified Continental of its election not to renew the LC beyond its expiration date of December 14, 2003. On December 10, 2003, Continental sent SouthTrust a sight draft at the address directed by the letter of credit; SouthTrust received the sight draft at 10:58 a.m. on Friday, December 12, 2003. By the sight draft Continental attempted to draw on the LC in the amount of $810,000. The sight draft read as follows:
"Pay to the order of CONTINENTAL CASUALTY COMPANY
"US Dollars Eight Hundred Ten Thousand and 00/100
"To: SouthTrust Bank, N.A.
"`Drawn under the SouthTrust Bank, N.A. Letter of Credit No. 00.OD.02804 dated December 14, 2000.'
 "Continental Casualty Company
 "By: /s/ W.V. Romashko
*339
 "W.V. Romashko
 "Vice President-Property Casualty
 Billing & Collections"
(Capitalization in original.)
The logo of Continental's parent company "CNA"and Romashko's telephone and facsimile numbers were also included on the sight draft.
The sight draft was submitted with a cover letter to SouthTrust from Romashko, also dated December 10, the letterhead of which bore the address "CNA Plaza 29 South, Chicago, Illinois XXXXX-XXXX." The letterhead also repeated Romashko's title, telephone number, and facsimile number and listed his e-mail address. The heading to the letter contained the following reference:
 "Applicant: Skilstaf, Inc.
 Letter of Credit No.: 00.OD.02804
 Draw Amount: USD $810,000.00"
In the cover letter, Romashko advised SouthTrust as follows:
"Enclosed is our sight draft to effect a draw on the above referenced letter of credit. Please review the enclosed document and contact Agnes N. Domingo at [area code and telephone number] immediately, if the document is not acceptable, for any reason.
"Please wire transfer the funds to:
 "Account Name: Continental Casualty Company
 "Bank: JP Morgan Chase Bank
 "ABA No.: [number provided in original]
 "Account No.: [number provided in original]
 "Ref. No.: GC1210132"
On December 15, 2003, SouthTrust contacted Agnes Domingo and advised her that it would not honor the sight draft "because Continental had not included its address on the sight draft." SouthTrust requested of Ms. Domingo that "Continental submit a revised draft which included Continental's address." Continental did so, presenting a second sight draft, bearing Continental's address, to SouthTrust on December 16, 2003. However, SouthTrust refused to honor this second sight draft on the basis that it had been presented after the LC had expired on December 14, 2003.
Continental submitted evidence to the trial court indicating that both before and after the presentment of the first sight draft on December 10, 2003, SouthTrust honored nearly identical sight drafts presented by Continental or one of its related entities, i.e., sight drafts bearing the name, but not the address, of the beneficiary.
On March 18, 2005, the trial court issued its order, which stated:
"This matter comes before the Court on Motion for Summary Judgment filed by Cross-Claim Defendant, SouthTrust Bank, and Motion for Summary Judgment filed by Cross-Claim Plaintiff, Continental Casualty Company, against Cross-Claim Defendant, SouthTrust Bank, and the Court having received argument and multiple briefs from both sides, Orders as follows:
"The Court finds that there is no genuine issue of material fact and therefore, Grants the Motion for Summary Judgment filed by SouthTrust Bank as Cross-Claim Defendant. Motion for Summary Judgment filed by Cross-Claim Plaintiff, Continental Casualty Company, against Cross-Claim Defendant, Southtrust Bank, is hereby Denied."
After the trial judge certified the March 18 order as final pursuant to Rule 54(b), Ala. R. Civ. P., Continental appealed from the summary judgment for SouthTrust and attempted to appeal from the denial of its own motion for a summary judgment.

Standard of Review
"Summary judgment is appropriate only when `there is no genuine issue as to any material fact and . . . the *340 moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P., and Dobbs v. Shelby County Econ. & Indus. Dev. Auth., 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party. System Dynamics Int'l, Inc. v. Boykin, 683 So.2d 419 (Ala.1996). `[W]here the evidence is in conflict, the issue must [be tried to the fact-finder].' Kitchens v. Winn-Dixie Montgomery, Inc., 456 So.2d 45, 47 (Ala.1984). In reviewing a summary judgment, an appellate court, de novo, applies the same standard as the trial court. Dobbs, supra."
Bruce v. Cole, 854 So.2d 47, 54 (Ala.2003).
Although we will review on the merits the summary judgment for SouthTrust, we cannot entertain Continental's attempted appeal of the denial of its own motion for a summary judgment. "`Such an order is inherently non-final and cannot be made final by a Rule 54(b) certification.. . . An order denying summary judgment is interlocutory and nonappealable.'" Fahey v. C.A.T.V. Subscriber Servs., Inc., 568 So.2d 1219, 1222 (Ala.1990)(quoting Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 257-58 (Ala.1988)).

Legal Analysis
It is well established that "Alabama, with the majority of the states, follows the `strict compliance' rule governing the acceptance of letters of credit." N & C Props. v. AmSouth Bank, N.A., 558 So.2d 906, 909 (Ala.1990).
Under Alabama law, the rights and obligations of a bank that issues a letter of credit are set forth in § 7-5-108, Ala.Code 1975, which states, in part:
"(a) Except as otherwise provided in Section 7-5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with the terms and conditions of the letter of credit. Except as otherwise provided in Section 7-5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear so to comply.
". . . .
"(e) An issuer shall observe standard practice of financial institutions that regularly issue letters of credit."
Furthermore, this standard of "strict compliance" is consistent with the rules set forth in the International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits ("UCP"), which were expressly adopted by the parties when the LC was issued.
Article 13 of the UCP provides, in part:
"Banks must examine all documents stipulated in the Credit with reasonable care, to ascertain whether or not they appear, on their face, to be in compliance with the terms and conditions of the Credit. . . . Documents which appear on their face to be inconsistent with one another will be considered as not appearing on their face to be in compliance with the terms and conditions of the Credit."
UCP, I.C.C. Pub. No. 500 (1993 Rev.).
Therefore, it is well established, and undisputed by both parties, that SouthTrust was required to honor Continental's sight draft if it appeared, on its face, strictly to comply with the terms and conditions of the LC.
SouthTrust argues that its dishonor of the first sight draft was proper because Continental failed to state in the sight draft the full name and address of the beneficiary and, thus, failed to comply *341 strictly with the terms and conditions of the LC. Continental stated in its sight draft that payment should be made to "Continental Casualty Company." SouthTrust insists that Continental should have stated that payment be made to "Continental Casualty Company, c/o Risk Management Group, CNA Plaza, 333 S. Wabash, Chicago, IL 60685, Attn: Contract Administration," because that information is the information listed under "Beneficiary" in the LC. SouthTrust alleges that Continental's failure to state this full name and address in the sight draft caused a discrepancy between the sight draft and the terms of the LC, and that this discrepancy constituted a failure to comply with Alabama's requirement of "strict compliance" with the terms of the LC. Therefore, SouthTrust contends, it was not required to honor the first sight draft.
In contrast, Continental contends that the inclusion of the full name and address of the beneficiary in the sight draft was not required in order to satisfy the requirement of "strict compliance" with the terms and conditions of the LC. Also, Continental argues, SouthTrust could have resolved any ambiguities it found in the sight draft by referencing the cover letter sent contemporaneously with the sight draft. Furthermore, Continental contends that SouthTrust did not observe its standard practice because SouthTrust had honored similar sight drafts for Continental both before and after the sight draft that is in question now.
Section 7-5-108(c) provides that when, as here, the basis for dishonor is a discrepancy in the presentation of the letter of credit and timely notice of the discrepancy is given, "an issuer is precluded from asserting as a basis for dishonor . . . any discrepancy not stated in the notice . . . ." unless such discrepancy results from fraud, forgery, or expiration of the letter of credit. Although the parties argue regarding the status and significance we should accord to the "Official Comment" to § 7-5-108; the recognition that should be accorded to the additional information available to SouthTrust from the cover letter that accompanied the December 10 sight draft; the import of Alabama caselaw predating the January 1, 1998, effective date of § 7-5-101 et seq., "Uniform Commercial CodeLetter of Credit"; and the rationales and results of various cases from other jurisdictions, we conclude that the issue presented is sufficiently straightforward and circumscribed that we need determine only whether the "terms and conditions of the letter of credit" required that any sight draft presented, in order to appear "on its face strictly to comply" with those terms and conditions, include the address of the presenting beneficiary. SouthTrust argues in its brief:
"Continental's entire argument rests on its mistaken belief that SouthTrust refused to honor its sight draft because it failed to include Continental's address, and that the letter of credit contained no such provision. Again, Continental's argument mischaracterizes the issue before this CourtSouthTrust did not dishonor the sight draft presented by Continental because of a `flaw or discrepancy' not listed in the letter of credit. Rather, SouthTrust dishonored the sight draft because the beneficiary specifically noted in the letter of credit was not the same beneficiary noted in the sight draft. A sight draft containing a name of a beneficiary different than that listed in the letter of credit certainly fails to strictly comply with the letter of credit."
(SouthTrust's brief, p. 23.)
Because the undisputed evidence, submitted in the form of an affidavit from Ms. Domingo and not challenged or contradicted *342 by SouthTrust, established that the discrepancy cited by SouthTrust in its December 15, 2003, notice to Continental was that "Continental had not included its address on the Sight Draft," SouthTrust is restricted by § 7-5-108(c) from attempting to recharacterize the discrepancy stated in that notice.
What are "the terms and conditions of the letter of credit" upon satisfaction of which SouthTrust committed that it would "undertake to promptly honor its payment obligation"? The LC advised Continental that (1) the LC had been established in "your favor" and would be honored upon presentation of "your sight draft(s)," (2) the sight draft had to be drawn on the SouthTrust account, (3) the sight draft had to indicate SouthTrust's letter-of-credit number 00.0D.02804, (4) the sight draft had to be for all or any part of the amount of the credit, (5) the sight draft had to be presented to SouthTrust at 112 North 20th Street, Birmingham, AL 35203, Attention: International Department, and (6) the presentation had to be on or before the original expiration date or any automatically extended expiration date. SouthTrust acknowledges that Continental's December 10 sight draft satisfied all of those terms and conditions, except for the identification of the beneficiary. Thus, the issue boils down to whether the term and condition of the LC that the beneficiary present "your sight draft" required something more than that the sight draft be from Continental. Stated differently, did the inclusion of Continental's address in its listing in the LC as "beneficiary," establish as a term and condition that any sight draft submitted by Continental include its address and specifically that same address listed on the LC. We conclude that the beneficiary was "Continental Casualty Company" and that it, as an entity, is the "your" referred to in the text of the LC. We agree with Continental's statement in its brief that "[t]he beneficiary is and was always intended to be an entity, not a destination." (Continental's brief, p. 20.)
Although SouthTrust argues in its appellate brief that Continental's sight draft failed "to correctly include the complete name of the beneficiary provided in the [LC]" and that the "beneficiary specifically noted in the [LC] was not the same beneficiary noted in the sight draft" (SouthTrust's brief, p. 8, 23), the sight draft does not support those contentions. The beneficiary of the sight draft was "Continental Casualty Company," at whatever address it might be using at the time it might seek to submit a sight draft drawn on the LC. Taking SouthTrust's argument to its logical extreme, if Continental had changed its physical or mailing address in any way subsequent to its listing its address as beneficiary on the LC and before the issuance of a sight draft, in order to comply strictly with the LC in submitting a sight draft drawing against it, Continental would have to state its original, but now incorrect, address. The notice of discrepancy given Continental by SouthTrust did not state that there was any doubt or uncertainty about whether the drawer of the sight draft, "Continental Casualty Company," was the same entity as "Continental Casualty Company," the beneficiary of the LC. Rather, in contacting Ms. Domingo, which Romashko's December 10 cover letter requested SouthTrust do "if the document is not acceptable, for any reason," SouthTrust simply advised Ms. Domingo that the sight draft was not acceptable because Continental had not provided its address. Because the LC nowhere required that a sight draft drawn on it by "Continental Casualty Company" list that entity's address, we cannot hold, as a matter of law, that inclusion of an address on the sight draft was a term or condition of the LC. Accordingly, SouthTrust's motion *343 for a summary judgment, predicated solely on the contention that the December 10 sight draft "failed to contain the same identifying information as to [Continental] as SkilStaf's [LC]," did not establish SouthTrust's right to a judgment as a matter of law on Continental's cross-claim in the case, and the summary judgment cannot be upheld.

Conclusion
For the reasons explained above, we reverse the summary judgment entered in favor of SouthTrust and remand this case to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SEE, LYONS, HARWOOD, WOODALL, SMITH, BOLIN, and PARKER, JJ., concur.
STUART, J., dissents.
STUART, Justice (dissenting).
I respectfully dissent. I would affirm the judgment of the trial court. I do not believe that the sight draft presented to SouthTrust Bank by Continental Casualty Company strictly complied with the terms and conditions of the letter of credit.