13 So.3d 369 (2009)
ALFA MUTUAL INSURANCE COMPANY
v.
David A. BONE and Lora Bone.
David A. Bone and Lora Bone
v.
Alfa Mutual Insurance Company.
1061808 and 1061834.
Supreme Court of Alabama.
January 9, 2009.
*370 Rebecca A. Walker, Gadsden, for appellant/cross-appellee Alfa Mutual Insurance Company.
Thomas E. Davis, Gadsden, for appellees/cross-appellants David A. Bone and Lora Bone.
BOLIN, Justice.
Alfa Mutual Insurance Company appeals from a summary judgment in favor of David A. Bone and his wife, Lora Bone (hereinafter collectively referred to as "the Bones"), on Alfa's complaint seeking a judgment declaring its rights and liabilities under an insurance policy. The Bones cross-appeal, asserting that the trial court erred in denying their summary-judgment motion as to one issue. We dismiss both the appeal and the cross-appeal.

Facts and Procedural History
At the time of the incident giving rise to this action, Robert E. Townley was residing in a house owned by Jean Townley Waters, his grandmother. The house was located on "Leesburg Rd. HWY 279" in Etowah County and was insured by a policy of insurance issued by Alfa. The declarations page of the policy named Waters as the insured and listed her mailing address as "908 S. 6th St., Gadsden, Al. 35901." The homeowner's policy issued by Alfa provides the following definitions:
"You and your mean the named insured shown on the Declarations.

"....
"9. Insured means;
"a. you and residents of your household who are:
"(1) your relatives;

"....
"16. Relative means a person related to you or your spouse by blood or marriage."
Additionally, the homeowner's policy excluded coverage for "bodily injury" or "property damage,"
"(1) which is either expected or intended by an insured ... [or]
"(2) which is the result of willful or malicious acts of an insured ...."
Townley had been residing at the Leesburg address for approximately two years at the time of the shooting that is the basis for this action. Townley did not pay his grandmother rent for living at the Leesburg address, but he did pay for the utilities and performed maintenance and upkeep on the house. At no time had Waters resided with Townley at the Leesburg address. Rather, at all times relevant to the issues presented in this case, Waters resided at the Gadsden address listed in the homeowner's policy.
The evidence established the following facts. Before she was married to David, Lora had been married to Townley. Townley's marriage to Lora ended in divorce in May 2004, after Lora and David had engaged in an extramarital affair. Townley and Lora were awarded joint custody of their children following the divorce. Townley and David had been friends before the divorce and continued to be friends afterwards. However, there was a history of arguments and confrontations between the men.
On January 2, 2005, Townley and his children had returned to the Leesburg address *371 after visiting relatives out of town. Lora and David were returning from Gatlinburg, Tennessee, where they had celebrated the new year. During the Bones' return trip, Townley and Lora argued over the course of several cellular-telephone conversations as to whether Lora could pick the children up that day. Townley testified that he had visitation with the children that day and that the children were not scheduled to return to Lora until the following day. The argument between Townley and Lora escalated with each conversation, and it ended with Lora telling Townley that she was coming to get the children and Townley telling Lora not to do so.
As Townley was unpacking his vehicle he placed a nine-millimeter handgun he owned in the rear pocket of his pants. After he placed the handgun in his pocket, one of the children called him over to a trampoline in the yard where she was playing. Townley was standing by the trampoline when the Bones arrived. The Bones parked in a paved driveway located on property owned by David Brewster, which was adjacent to the Leesburg address. The driveway was used jointly by both Brewster and Townley as a boat ramp to access Lake Weiss, which was located to the rear of the Waters and Brewster properties. The driveway was also used by Townley to access a small outbuilding on the Waters property where personal recreational watercraft were stored. Townley was unsure where the actual boundary line between the Brewster property and the Waters property was located but stated that when one pulls into the driveway he or she is on Brewster's property and that when one reaches the water he or she is on Waters's property.
After the Bones pulled into the driveway, Lora got out of her vehicle and began arguing with Townley. Townley stated that he told Lora that she needed to leave. Townley then moved toward David, who was standing beside the driver's door of the vehicle, and the two men began arguing. Townley stated that he tossed his cellular telephone at David. David stated that Townley threw the cellular telephone at him and struck him in the face with it. David then picked Townley's cellular telephone up and threw it toward the lake. Townley then moved around the vehicle and struck the windshield and the passenger-side window, causing them both to shatter. Townley reached into the vehicle through the shattered passenger-side window, retrieved David's cellular telephone, and then threw David's telephone toward the lake.
After Townley and David had thrown each other's cellular telephones toward the lake, they proceeded down the driveway toward the lake to retrieve them. Townley and David argued, cursed, and "scuffled" with each other as they made their way down the driveway. As the confrontation escalated in the driveway, Townley yelled for his oldest child to telephone emergency 911. He then pulled the handgun from his back pocket and told David to leave. Townley stated that he held the handgun across his chest in a nonthreatening manner and that he never pointed it at David. Townley testified that David then threw a punch at him, striking him in the eye and causing the handgun to discharge. David was struck in the chest and severely injured. Townley testified that he did not know how the safety device on the handgun became disengaged. David testified that he did not punch Townley and that once he saw the handgun in Townley's hand he decided to leave. He stated that in the instant that he turned to walk away he felt something strike him in the chest. David testified that he never saw the gun pointed at him in a threatening manner. After being shot, David walked up the *372 driveway and left the scene with Lora. Townley was indicted for, and pleaded guilty to, assault in the third degree, a violation of § 13A-6-22(a)(2), Ala.Code 1975.
The Bones sued Townley and Waters on December 22, 2006, alleging that Townley negligently and/or recklessly discharged a handgun while he was on premises owned by Waters, which caused David to suffer serious personal injuries. Townley and Waters answered the complaint on January 23, 2007, generally denying the allegations in the complaint and asserting certain affirmative defenses.
On February 1, 2007, the Bones amended their complaint to allege that Townley's conduct in discharging the handgun was willful and wanton. On March 2, 2007, Alfa moved to intervene in the Bones' action against Townley and Waters, seeking a declaration of its rights and liabilities under the homeowner's insurance policy issued by Alfa to Waters, which insured the premises on which the shooting allegedly occurred. Alfa alleged in its complaint in intervention that Townley and Waters were not covered by the policy because, it alleged, Townley was not an insured under the policy; the shooting did not occur on the insured premises; the shooting was excluded from coverage as an "expected or intended" act; and the shooting was excluded from coverage as a "willful or malicious" act. On April 2, 2007, the trial court granted Alfa's motion to intervene. Thereafter, the Bones answered Alfa's complaint in intervention, generally denying the allegations.
On June 14, 2007, the Bones moved for a summary judgment, arguing that Townley, Waters's grandson, was residing on the insured premises with her consent at the time of the shooting and that the policy exclusions for "expected or intended" acts and "willful or malicious" acts were not applicable to exclude Townley from coverage because, they argued, there was no evidence to indicate that Townley intended to shoot David.
On July 18, 2007, Alfa responded to the Bones' motion for a summary judgment and filed its own motion for a summary judgment. Alfa argued in support of its motion that Townley was not an insured under the homeowner's policy; that the shooting did not occur on the insured premises; and that, even if Townley was an insured and the shooting occurred on the insured premises, there was no coverage because the shooting was an "expected or intended" act of Townley or a "willful or malicious" act and therefore fell within an exclusion to the policy.
On July 23, 2007, the Bones amended their complaint a second time to delete the claim alleging that Townley's conduct constituted willful or wanton conduct. On July 26, 2007, the Bones amended their motion for a summary judgment and responded to Alfa's argument in its summary-judgment motion that Townley was not an insured under the homeowner's policy and that the shooting did not occur on the insured premises. The Bones contended that they were entitled to a summary judgment on all four coverage issues before the trial court. On August 2, 2007, Alfa responded to the Bones' amended motion for a summary judgment and their response to Alfa's summary-judgment motion. Alfa also filed an answer on that same date to the Bones' second amended complaint.
Following a hearing, the trial court, on September 7, 2007, entered a summary judgment in favor of the Bones and against Alfa on three of the four coverage issues, finding: (1) that the shooting was not expected or intended and thus was not excluded from coverage under the "expected or intended" exclusion; (2) that Townley *373 was an insured under the policy; and (3) that the shooting occurred on the insured premises. However, the trial court found that the issue whether coverage was excluded based on the exclusion for "willful or malicious" acts presented a factual issue to be decided by the trier of fact. On September 19, 2007, the trial court entered an order certifying its summary judgment on the three coverage issues as final pursuant to Rule 54(b), Ala. R. Civ. P.[1] These appeals followed.

Case no. 1061808
This Court recently stated:
"[I]t is incumbent upon this Court to ensure that it has jurisdiction to hear the appeal.
"`"As this court has said many times previously, a final judgment is necessary to give jurisdiction to this court on an appeal, and it cannot be waived by the parties. ..."
"`....
"`When it is determined that an order appealed from is not a final judgment, it is the duty of the Court to dismiss the appeal ex mero motu.'
"Powell v. Republic Nat'l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974) (quoting McGowin Investment Co. v. Johnstone, 291 Ala. 714, 715, 287 So.2d 835, 836 (1973)).
"`Ordinarily, an appeal can be brought only from a final judgment. Ala.Code 1975, § 12-22-2. If a case involves multiple claims or multiple parties, an order is generally not final unless it disposes of all claims as to all parties. Rule 54(b), Ala. R. Civ. P. However, when an action contains more than one claim for relief, Rule 54(b) allows the court to direct the entry of a final judgment as to one or more of the claims, if it makes the express determination that there is no just reason for delay'
"Grantham v. Vanderzyl, 802 So.2d 1077, 1079-80 (Ala.2001)."
North Alabama Elec. Coop. v. New Hope Tel. Coop., 7 So.3d 342, 344 (Ala.2008).
With regard to Rule 54(b), Ala. R. Civ. P., this Court has stated:
"Pursuant to Rule 54(b), a trial court may direct `the entry of a final judgment as to one or more but fewer than all of the claims or parties.' But Rule 54(b) makes an order finaland therefore appealable`only where the trial court has completely disposed of one of a number of claims, or one of multiple parties.' Tanner v. Alabama Power Co., 617 So.2d 656, 656 (Ala.1993) (quoting Committee Comments on the 1973 adoption of Rule 54(b)) (emphasis added in Tanner). In other words, for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party."
Haynes v. Alfa Fin. Corp., 730 So.2d 178, 181 (Ala. 1999).
In this case, Alfa sought a judgment declaring its rights and liabilities under the homeowner's policy issued to Waters based on its presentation of four coverage issues: (1) whether Townley was an insured under the policy; (2) whether the shooting occurred on insured premises; (3) whether the shooting was excluded from coverage as an "expected or intended" act; and (4) whether the shooting was excluded from coverage as a "willful or malicious" act. The trial court entered a *374 summary judgment against Alfa and in favor of the Bones on the first three coverage issues. However, the trial court found that a material question of fact existed as to whether the shooting was the result of a "willful or malicious" act, and it did not dispose of this issue by summary judgment. Because this issue is still pending in the trial court awaiting determination by the appropriate trier of fact, the summary judgment did not completely dispose of Alfa's claim seeking a declaratory judgment as to its rights and liabilities under the homeowner's policy. Haynes, supra. See also National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B., 28 F.3d 376, 381 n. 3 (3d Cir.1994), addressing the federal counterpart to Ala. R. Civ. P. 54(b) ("[Fed. R.Civ.P.] 54(b) may be used to grant final judgment status over a declaratory judgment action which is part of a multi-claim litigation, so long as the declaratory judgment aspect of the litigation has in fact been brought to final judgment. See, e.g., Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1253 n. 4 (3d Cir.1993); Granite State Ins. Co. v. Degerlia, 925 F.2d 189, 191 (7th Cir.1991); Horn v. Transcon Lines, Inc., 898 F.2d 589, 594 (7th Cir. 1990). Thus, the term `claim' as used in Rule 54(b) must be construed broadly so as to include declaratory judgment actions." (emphasis added)). Therefore, the trial court's attempted Rule 54(b) certification of its partial summary judgment resolving issues that did not finally conclude Alfa's declaratory-judgment action was not effective to create a final and appealable judgment. Because this appeal is from a nonfinal judgment, we cannot address the issues presented, and the appeal must be dismissed.

Case no. 1061834
The Bones appeal from the denial of their motion for a summary judgment on the issue whether Townley was excluded from coverage under the "willful or malicious" acts exclusion of the policy. The Bones had argued in support of their motion that the "willful or malicious" acts exclusion was not applicable to exclude Townley from coverage because, they argued, there was no evidence to indicate that Townley intended to shoot David. This Court will not entertain the Bones' attempted appeal of the denial of their motion for a summary judgment. "`"Such an order is inherently non-final and cannot be made final by a Rule 54(b), [Ala. R. Civ. P.,] certification.... An order denying summary judgment is interlocutory and nonappealable."'" Continental Cas. Co. v. SouthTrust Bank, N.A., 933 So.2d 337, 340 (Ala.2006) (quoting Fahey v. C.A.T.V. Subscriber Servs., Inc., 568 So.2d 1219, 1222 (Ala.1990), quoting in turn Parsons Steel, Inc. v. Beasley, 522 So.2d 253, 257-58 (Ala.1988)). Accordingly, because the Bones have attempted to cross-appeal from a nonappealable judgment, we must dismiss the cross-appeal.

Conclusion
We dismiss both Alfa's appeal and the Bones' cross-appeal as being from nonfinal judgments.
1061808 APPEAL DISMISSED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, and PARKER, JJ., concur.
MURDOCK, J., concurs specially.
1061834 APPEAL DISMISSED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
*375 MURDOCK, Justice (concurring specially).
I concur specially in case no. 1061808; I concur in case no. 1061834.
As to case no. 1061808, I concur in the main opinion's conclusion that, because the issue whether the shooting was the result of a "willful or malicious" act is still awaiting determination, the trial court's summary judgment did not completely dispose of Alfa's claim. Even if the trial court, for purposes of the summary-judgment motion filed by the Bones, were to make a determination as to whether the shooting was the result of a "willful or malicious" act, and thereupon grant the Bones' motion for a summary judgment as to the question of Alfa's liability, I question whether that judgment would be appropriate for certification as a final judgment under Rule 54(b), Ala. R. Civ. P. The issues involved in such a judgment would in many respects be the same as those yet to be adjudicated between the Bones, on the one hand, and Waters and Townley, on the other, and the risk of inconsistent results remains. Indeed, any final determination as to whether Alfa will be liable monetarily to the Bones will still depend on whether Waters and Townley are found liable to the Bones on the underlying tort claim, something not yet determined. As this Court stated in Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987):
"`Rule 54(b) certifications should be granted only in exceptional cases ....'....
"....
"The facts in this case ... do not present the type of situation that Rule 54(b) was intended to cover. ... It ... appears that the issues in the ... claims in this case are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results. We must conclude, therefore, that in the interest of justice, the claims should not be adjudicated separately."
NOTES
[1] On September 12, 2007, the Bones moved the trial court to sever and/or bifurcate Alfa's complaint in intervention; Alfa opposed the Bones' motion to sever and/or bifurcate. It does not appear that the trial court ruled on this motion.